**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION**

| | |
|---|---|
| Deborah Meek Hickerson, ) | |
| ) | Civil Action No. 8:13-cv-02311-JMC |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER AND OPINION** |
| ) | |
| Yamaha Motor Corp., U.S.A., and Yamaha ) | |
| Motor Co., Ltd., ) | |
| ) | |
| Defendants. ) | |
| ) | |

This matter is before the court on the Motion in Limine of Plaintiff Deborah Meek Hickerson ("Plaintiff") seeking to exclude expert testimony and argument on multiple issues. (ECF No. 65.) Defendants Yamaha Motor Corporation, U.S.A. and Yamaha Motor Co., Ltd. (collectively, "Defendants") oppose Plaintiff's Motion in Limine. (ECF Nos. 76–79, 81–82, 84.) For the reasons explained below, the court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion in Limine (ECF No. 65.)

### I.     RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

This action is before the court based on Plaintiff's personal injury product liability claim against Defendants. (ECF No. 19.) Plaintiff alleges Defendants' liability under theories of (1) strict liability, (2) negligence, and (3) breach of warranty for incidents occurring on June 30, 2012 where Plaintiff was injured as a result of falling off of a personal watercraft ("PWC") designed, manufactured, and distributed by Defendants. (*Id.* at 2–8.)

In the Motion before the court, Plaintiff, citing Fed. R. Evid. 401, 402, and 403 (relating to relevance) and Fed. R. Evid. 702 (relating to expert testimony), seeks to exclude evidence relating to (1) Mr. Kevin Breen's testing regarding the effects of alcohol on passengers riding on a PWC,

1

(2) alcohol consumption by Plaintiff, in the absence of evidence of impairment, (3) Mr. Robert Taylor's computer simulation and accident reconstruction, (4) the use of protective clothing, in the absence of evidence that Plaintiff's injuries would have been avoided with such clothing, (5) the "United States Coast Guard's opinions, approvals, and standards regarding the PWC," (6) Dr. Nathan Dorris's testimony regarding irrelevant warnings, (7) "expert testimony or argument that the operation of the [PWC] by 4 people was a causative factor in the Plaintiff's injuries," and (8) "expert testimony or argument that the operation of the [PWC] by an operator under the age of 16 was a causative factor in the Plaintiff's injuries." (ECF No. 65 at 2–12.) Defendants opposed each of Plaintiff's arguments in separate responses.

## II.     LEGAL STANDARD

Under Fed. R. Evid. 401, evidence is relevant if (1) "it has a tendency to make a fact more or less probable than it would be without the evidence" and (2) "the fact is of consequence in determining the action." Irrelevant evidence may not be admitted as evidence. Fed. R. Evid. 402. Relevant evidence may be excluded where "its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

The admissibility of expert witness testimony is specifically governed by Fed. R. Evid. 702, which provides that an expert may offer their opinion if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

In determining whether expert witness testimony is admissible, the court evaluates whether it is relevant and reliable. *Daubert v. Merrell Dow. Pharm., Inc.*, 509 U.S. 579, 589 (1993). In making

an assessment of relevance and reliability, courts, acting as a "gatekeeper" in determining the admissibility of expert testimony, may consider a number of factors, including: (1) whether a theory or technique can and has been tested; (2) whether a theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error, in conjunction with the existence and maintenance of standards controlling the technique's operation; and (4) whether there is "general acceptance" of the theory or technique within the relevant scientific community. *Id.* at 589, 592–95. But *Daubert*'s list of factors is "meant to be helpful, not definitive" and "do not all necessarily apply even in every instance in which the reliability of scientific testimony is challenged." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 151 (1999). The Court of Appeals for the Fourth Circuit has further stated that "the touchstone of admissibility is whether the testimony will assist the trier of fact." *Wehling v. Sandoz Pharmaceuticals Corp.*, 162 F.3d 1158, 1998 WL 546097, at \*3 (4th Cir. 1998) (table decision).

The Court of Appeals for the Fourth Circuit also identifies two guiding principles for courts' decisions on the admissibility of expert witness testimony. *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999). First, "court[s] should be mindful that Rule 702 was intended to liberalize the introduction of relevant expert evidence" and second "court[s] must recognize that due to the difficulty of evaluating their testimony, expert witnesses have the potential to be both powerful and quite misleading." *Id.* Regardless, "the proponent of the [expert] testimony must establish its admissibility by a preponderance of proof." *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir. 2001).

### III.    ANALYSIS

*1. Mr. Breen's Testing Regarding Alcohol Effects on PWC Passengers*

Plaintiff argues that "Dr. Breen [sic] is not qualified to offer testimony and opinions [] regarding intoxication of the operators of the [PWC] and [that Mr. Breen's] testing is not reliable, relevant, peer reviewed, or published." Plaintiff also argues that admitting Mr. Breen's testimony would be more prejudicial than probative under Fed. R. Evid. 403. (ECF No. 65 at 2.)

Defendants allege that "based upon [Mr. Breen's] knowledge, skill, experience, training and education," he is qualified to address:

> (1) Plaintiff's consumption of alcohol on the day of the accident at issue in this case; (2) the effect such alcohol consumption contributed to the accident at issue in this case; (3) the bases for Mr. Breen's opinions, including alcohol testing data and literature that Mr. Breen has personally performed and/or reviewed; (4) whether Plaintiff complied with the warnings located on the subject PWC; and (5) how to interpret the warnings located on the subject PWC regarding alcohol consumption.

(ECF No. 77 at 2.) Specifically, Defendants argue that, based on tests Mr. Breen conducted that "measure[d] the effects of low-to-moderate alcohol consumption," Mr. Breen is qualified to opine that (1) "relatively low levels of alcohol consumption affect[] a passenger's response time," (2) "a person's ability to maintain a secure position on the rear of a PWC is affected by low levels of alcohol consumption," and (3) "Plaintiff's alcohol consumption prior to the accident at issue in this lawsuit played a part in Plaintiff coming off of the rear of the PWC." (*Id.* at 2–3.) As to relevance, Defendants argue that Mr. Breen's testimony is relevant to Defendants' defenses in the instant action because it addresses: "(1) Plaintiff's comparative fault; (2) whether Plaintiff complied with the warnings on the subject [PWC], and (3) how to interpret the warnings on the subject PWC regarding alcohol consumption" (*Id.* at 3.)

Upon review of Mr. Breen's testing procedure, (*see* ECF No. 76-4), the court finds that Mr. Breen's testing may "help the trier of fact to understand the evidence or to determine a fact in

4

issue." Fed. R. 702. Specifically, Mr. Breen's testing addresses the potential effects of moderate alcohol consumption on PWC passengers. (ECF No. 76-4.) While the parties dispute the relevance of Plaintiff's alcohol consumption in the instant action, they do not dispute that Plaintiff consumed alcohol on the day of the incident. Assuming that Plaintiff's alcohol consumption is relevant to the instant action,[1] two questions remain about Mr. Breen's testing: (1) whether it is reliable and (2) whether its probative value outweighs its prejudicial effect.

Although *Daubert* provides factors by which to evaluate the reliability of expert testimony, the court also notes that the inquiry under Fed. R. Evid. 702 is flexible. 509 U.S. at 594. Indeed, the *Daubert* factors are not intended to be an exhaustive or dispositive list of factors. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 151 (1999). In *Kumho*, the Court notes that "[i]t might not be surprising . . . that a claim made by a scientific witness has never been the subject of peer review, for the particular application at issue may never previously have interested any scientist." *Id.* The instant action is perhaps an example of where the *Daubert* factors cannot be dispositive, because although Mr. Breen's tests could plausibly be repeated or peer reviewed, there is no reason for it to be because its relevance is primarily related to this litigation's context.

Here, the court looks to Mr. Breen's qualifications as an accident reconstructionist and the methodology by which he determined his conclusions to determine whether his testing is "based on sufficient facts or data" and "the product of reliable principles and methods." Fed. R. Evid. 702. Mr. Breen's education and experience, through teaching, publishing, and issuing technical reports, all illustrate his qualifications to opine on issues of accident reconstruction. (ECF No. 76-3). On the issue of reliability, Plaintiff offers several critiques as to the reliability of Mr. Breen's methodology regarding the measurement and use of the blood alcohol content ("BAC") in his

---

[1] *See* discussion *infra* Part III.2 regarding the relevance of Plaintiff's alcohol consumption.

testing. (ECF No. 65 at 3–4.) The court is convinced that Mr. Breen's methodology in dosing individuals and measuring BAC was sound based on his consultation of both relevant literature and a toxicologist. (ECF Nos. 65-3 at 7; 76-4.) To the extent Plaintiff seeks to discredit Mr. Breen's conclusions, Plaintiff is still entitled to cross-examine Mr. Breen and to present her own witnesses and evidence that contradict Mr. Breen's conclusions. *See, e.g.*, *Daubert*, 509 U.S. at 596 (citing *Rock v. Arkansas*, 473 U.S. 44, 61 (1987) (discussing the "appropriate means of attacking shaky but admissible evidence"); *see also Glass v. Anne Arundel Cnty.*, 38 F. Supp. 3d 705, 716 (D. Md. 2014) (citing relevant cases and further stating that criticism of an expert's conclusions based on their failure to account for the effect of other factors "go[es] to the weight of the report, not its admissibility, and may be challenged on cross examination"). Based on the foregoing analysis, Mr. Breen's testing is admissible under Fed. R. Evid. 702.

As to the prejudicial effect of admitting Mr. Breen's testing, the court agrees that absent any evidence as to Plaintiff's actual BAC it would be prejudicial to Plaintiff for Mr. Breen to opine on the effect of alcohol on Plaintiff specifically.[2] However, as Defendants note, Mr. Breen's testing may be admissible "without regard to a specification as to the specific BAC that Plaintiff had at the time of the accident." (ECF No. 77 at 4.) Accordingly, this court finds that Mr. Breen's testimony is admissible with regards to discussing the effects of moderate alcohol consumption on passengers of a PWC, but it is not admissible to address Plaintiff's specific BAC or the specific effect of her unknown BAC on the accident at issue.

---

[2] Mr. Breen concluded in his report that "low and moderate" doses of alcohol, which equated to BAC levels of 0.03–0.06, affected a PWC passenger's ability to remain secure during acceleration. (ECF No. 76-4 at 12.)   But the fact that in South Carolina, a .08 reading of a breath test creates an inference of driving under the influence in violation of the law, S.C. Code Ann. § 56-5-2950 (2016), may unfairly influence a jury in their factual determinations about the possible role of alcohol consumption on Plaintiff's accident and injuries since Plaintiff's specific alcohol has not been determined.

*2. Arguments Relating to Plaintiff's Alcohol Consumption*

Plaintiff alleges that evidence of her alcohol consumption should not be admissible under Fed. R. Evid. 401, 402, and 403 because absent evidence of impairment any evidence of Plaintiff's alcohol consumption is more prejudicial than probative. (ECF No. 65 at 4–6.) Defendants argue that Plaintiff's argument creates a false barrier to admissibility by seeking to establish impairment as a threshold to the admissibility of evidence regarding Plaintiff's alcohol consumption. (ECF No. 79 at 5.) Defendants specifically maintain that testimony from Mr. Breen, Dr. Dorris, and Mr. Taylor relating to Plaintiff's alcohol consumption are relevant to the following issues a jury will consider: "Plaintiff's comparative fault; whether Plaintiff complied with the warnings located on the [subject PWC]; and how to interpret the warnings located on the subject PWC regarding alcohol consumption." (*Id.* at 1–3.)

The court agrees with Defendants regarding the issues to which Plaintiff's alcohol consumption are relevant. Plaintiff argues that because there is no evidence that she was impaired at the time of the accident, Defendants' experts' findings are irrelevant. (ECF No. 5–6.) But those arguments are more appropriate for trial, where a jury may evaluate and assign weight to the parties' conflicting arguments. *See Ruark v. BMW of N. Am., LLC*, No. 1:09-cv-02738, 2014 WL 351640 (D. Md. Jan 30, 2014) (noting that "the Supreme Court did not intend the gatekeeper role [of a judge] to 'supplant the adversary system or the role of the jury'" with regards to evaluating expert testimony (quoting *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1311–12 (11th Cir. 1999)).

As noted above, because Defendants do not have information on Plaintiff's BAC, their testimony regarding causation is limited.[3] But, to the extent Defendants offer evidence regarding

---

[3] *See* discussion *supra* Part III.1.

7

the fact that Plaintiff did consume alcohol on the day of the accident and that alcohol consumption may cause impairment, that evidence is both relevant and more probative than prejudicial under Fed. R. Evid. 401, 402, and 403. *See, e.g.*, *Schultz v. Butcher*, 24 F.3d 626, 632 (4th Cir. 1994) (ruling that excluding evidence of alcohol consumption was not harmless error where the exclusion prevented parties from "fully developing evidence relevant to a material issue"). Accordingly, evidence related to Plaintiff's alcohol consumption, as indicated herein, are admissible.

*3. Mr. Taylor's Computer Simulation and Accident Reconstruction*

Plaintiff argues that Mr. Taylor's computer simulation is an "outcome-predictive computer simulation" in the guise of an accident reconstruction. (ECF No. 65 at 6.) Plaintiff asserts that Mr. Taylor's simulation should be excluded under Fed. R. Evid. 401, 402, and 403 because (1) it "fails to take in to [sic] account the true properties of the cruiser/bolster seat he modeled," (2) it "is not a fair and accurate representation of the evidence evidence," in that it does not mirror the results of the on-water testing conducted by both parties, and (3) it is more prejudicial than probative, as it will mislead the jury by diverging from the results of the on-water testing both parties conducted. (ECF No. 65 at 6–7.)

Defendants argue that Mr. Taylor's simulations "speak directly to the error of Plaintiff's alternative design theory and to the errors and misleading nature of [Plaintiff's expert's] animation," and thus they are relevant to the instant action. (ECF No. 84 at 1.) Further, Defendants argue that their simulation is necessary to assist the jury in analyzing the events of the accident in light of the inaccuracies in Plaintiff's expert's simulation. (*Id.* at 2.)

The court agrees with Defendants as to the relevance of Mr. Taylor's simulation, particularly as it speaks specifically to Defendants' defense against Plaintiff's strict liability claim. *See* Fed. R. Evid. 401. The court disagrees with Plaintiff's contention that Mr. Taylor's testimony

8

will be more prejudicial than probative primarily because discrepancies between Mr. Taylor's simulation and the on-water simulation does not necessarily make Mr. Taylor's simulation prejudicial to Plaintiff. Rather, it highlights that there are differences in the manner in which Plaintiff and Defendants have simulated the events that occurred in this matter. Any differences between the on-water testing and the simulation are not sufficient to exclude evidence under Fed. R. Evid. 403. This is especially true because the court is not presented with any legal or scientific argument as to why the on-water testing is the standard by which other simulations in this action should be evaluated.

Further, Mr. Taylor's use of a harder seat bolster in his simulation does not in and of itself disqualify his testimony under Fed. R. Evid. 401, 402, or 403.[4] The court notes that both parties criticize each other's simulation seat modeling, (ECF Nos. 65 at 6; 84 at 2 n. 2), and the other's simulation design generally for being outcome driven (ECF Nos. 65 at 6; 84 at 2). Neither party's simulations can be undisputedly described as fully re-creating the accident at issue; however this does not necessarily affect admissibility.[5] The court finds that the different results found in Plaintiff and Defendants' simulations are more appropriately evaluated by a jury in light of the

---

[4] In response to Plaintiff's contention that there is a set standard by which the admissibility of computer simulations is governed, (ECF No. 65 at 6 (citing *Clark v. Cantrell*, 332 S.C. 433, 448–49 (S.C. Ct. App. 1998))), the court notes that the Fourth Circuit has previously declined to adopt a "rigid standard for the admissibility of computer animated videotape simulations." *Strock v. S. Farm Bureau Cas. Ins. Co.*, 998 F.2d 1010, 1010 (4th Cir. 1993) (table decision). Further, it has held that "trial judges [] are in the best position to consider the relevancy of offered evidence and to weigh its probative value against its potential prejudicial effect." *Id.* (citing *Reed v. Tiffin Motor Homes, Inc.*, 697 F.2d 1192, 1199 (4th Cir. 1982).
[5] *See Smith v. Wyeth-Ayerst Labs. Co.*, 278 F. Supp. 2d 684, 704 (W.D.N.C. 2003) (noting that *Daubert* neither eliminates nor prohibits a "battle of the experts" and that the defendant's expert's opinion "is not unreliable merely because he has a different opinion than that of [the p]laintiff's expert").

already established relevance of Mr. Taylor's simulation. Accordingly, Mr. Taylor's simulations are admissible.

  *4. Expert Evidence and Argument about Use of Protective Clothing*

  Plaintiff argues that expert testimony offered by Defendants on the issue of whether protective clothing would have prevented Plaintiff's injuries is both irrelevant and more prejudicial than probative under Fed. R. Evid. 403, because the testing that forms the basis of Dr. Breen's opinions was not conducted on the specific model that was the subject of Plaintiff's injuries. (ECF No. 65 at 8.) Plaintiff does not specify whether her relevance objection is grounded in Fed. R. Evid. 401 or Fed. R. Evid. 702. However, because the objection is to the relevance of expert testimony, the court treats Plaintiff's relevance objection as one under Fed. R. Evid. 702.

  Defendants oppose Plaintiff's Motion in Limine, arguing that the defense experts' testimony that certain protective clothing would have prevented Plaintiff's injuries satisfies the reliability and relevance requirements of Fed. R. Evid. 702. (ECF No. 76 at 3.) Specifically, Defendants argue that the expert testimony they attempt to offer is relevant notwithstanding the fact that the testing was not performed on the specific PWC model on which Plaintiff was injured. Defendants maintain that because the tests were performed on models with higher jet thrust capacities than the model at issue, the tests are relevant. (*Id.* at 4.) Furthermore, Defendants argue that Dr. Breen's testimony is reliable because it is based not only on his own extensive testing, but also on a review of relevant medical literature as well as industry and governmental standards. (*Id.* at 3.) Thus, according to Defendants, there is an adequate scientific basis to support Dr. Breen's opinions. (*Id.*)

  As for Plaintiff's relevance objection under 702(a), the court notes that the requirement that expert testimony help the trier of fact "goes primarily to relevance. 'Expert testimony which

10

does not relate to any issue in the case is not relevant and, ergo, non-helpful.'" *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 591 (1993) (quoting 3 Weinstein & Berger P702[02], p. 702–18.) Dr. Breen's expert testimony regarding his opinion that use of a wetsuit or other protective clothing would have prevented intrusion injuries is relevant to issues of both comparative negligence and causation, both issues central to Plaintiff's strict liability and negligence claims. Dr. Breen's testimony also satisfies the requirements of 702(b) because he bases his testimony about the efficacy of wetsuits on sufficient facts or data given that he relies on his review of medical literature (81 scholarly articles), his own extensive testing, and industry and governmental standards recommending the use of wetsuits when riding PWCs. (ECF No. 76 at 7). In assessing the reliability of the principles and methods underlying Dr. Breen's opinion, the court notes that a number of factors are helpful to this assessment: (1) whether a theory or technique has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error of the technique; (4) whether the theory or technique has been generally accepted within the scientific community. *Daubert*, 509 U.S. at 592–95. In light of these factors, Dr. Breen's reliance on a review of medical literature and industry and governmental standards poses no reliability concerns.

However, because Defendants have presented no evidence about the specific methods that Dr. Breen used when conducting his own testing on the efficacy of wetsuits for preventing intrusion injuries, the court cannot find that Mr. Breen's testimony about the results of his own tests meets the reliability requirements (the *Daubert* factors) under Fed. R. Evid. 702(c). Therefore, the court finds that Mr. Breen should be precluded from speaking about the results of his own testing when delivering his testimony about the efficacy of wetsuits due to the lack of evidence adduced regarding his testing methods. The court also finds that Mr. Breen's testimony about the

11

efficacy of wetsuits based on a review of the medical literature and industry and governmental standards is not more prejudicial than probative under Fed. R. Evid. 403. Testimony that protective clothing would have prevented intrusion injuries is highly probative on issues of both comparative negligence and causation, and there is no accompanying prejudice to Plaintiff by introducing this evidence.

   5. *United States Coast Guard's Opinions, Approvals, and Standards Regarding the PWC*

Plaintiff claims that Defendants' attempt to offer evidence of the United States Coast Guard's ("USCG") opinions, approvals and standards via the expert testimony of Mr. Taylor and Mr. Breen constitutes inadmissible hearsay evidence. (ECF No. 65 at 9.) Although Plaintiff does not explicitly make a relevance argument, Plaintiff argues: "The only safety standard [Defendants] allege the PWC meets is an initial inspection of the first PWC in 1971. As such the Court should exclude any evidence and argument concerning the USCG's involvement or standards relating to the watercraft at issue." (*Id*.) Implicit in this argument is the contention that evidence of the initial inspection of the first PWC is not relevant to whether the 2011 Yamaha WaveRunner VXS meets USCG safety standards; the court will evaluate the argument under Fed. R. Evid. 401.

Defendants oppose Plaintiff's Motion in Limine, arguing that expert testimony regarding USCG regulations and safety standards is relevant because evidence of compliance with industry standards is admissible in products liability cases to show the reasonableness of a design and determine whether a product is defective under the risk-utility test. (ECF No. 82 at 4.) Defendants also argue that, because Plaintiff makes a claim for punitive damages, evidence of compliance with safety standards is relevant to whether Defendants had the requisite state of mind for a punitive damages award. (*Id*. at 5.) Specifically in response to Plaintiff's hearsay arguments, Defendants argue that expert testimony regarding the USCG's standards and approvals is an exception to the

prohibition of hearsay under Fed. R. Evid. 803(18) because 803(18) applies to industry and government safety standards, in addition to learned treatises, periodicals and pamphlets. (*Id*. at 5–6.) Furthermore, Defendants argue even if evidence regarding USCG's standards and approvals is hearsay, it should still be admissible under Fed. R. Evid. 703 because its probative value substantially outweighs its prejudicial effect. (*Id.* at 6.)

In first addressing Plaintiff's relevance argument, the court notes that South Carolina has adopted the risk-utility test articulated in the Restatement (Third) of Torts for assessing whether a product's design is defective in products liability cases. *Branham v. Ford Motor Co.*, 701 S.E.2d 5, 14-17 (S.C. 2010). This court has held: "The risk-utility test determines that a product is unreasonably dangerous and defective if the danger associated with the use of the product outweighs the utility of the product. With the risk-utility test, the state of the art and industry standards are relevant to show . . . the reasonableness of the design." *Miles v. DESA Heating LLC,* 2012 U.S. Dist. LEXIS 45433 (D.S.C. 2012). Based on South Carolina law and this court's holding in *Miles*, evidence relating to compliance with industry safety standards promulgated by the USCG is clearly relevant to an assessment of the Yamaha WaveRunner VXS's allegedly defective design. Furthermore, the court notes that evidence regarding a defendant's compliance with industry standards is "probative on the issue of the wantonness, willfulness, and maliciousness of their acts" and is thus relevant to assessing a plaintiff's claim for punitive damages under South Carolina law. *Reed v. Tiffin Motor Homes, Inc.*, 697 F.2d 1192, 1198 (4th Cir. 1982).

As to her argument that evidence regarding the USCG's standards and approvals is hearsay, the court notes that Plaintiff refers this court to no specific reason or authority for why this is so. Defendants argue that evidence regarding the USCG's standards and approvals is an exception to

the hearsay rule under Fed. R. Evid. 803(18).[6] (ECF No. 82 at 5-6.) The court notes that "[s]afety codes have traditionally been treated as coming within the learned treatise exception provided by Rule 803(18)" and have been admitted under the residual exception to the hearsay rule (now Fed. R. Evid. 807, but formerly Fed. R. Evid. 803(24)) "because they are inherently trustworthy and because of the expense and difficulty involved in assembling at trial those who have compiled such codes." *Alexander v. Conveyors & Dumpers, Inc.*, 731 F.2d 1221, 1229 (5th Cir. 1984). Thus, the court agrees with Defendants that the USCG safety standards and regulations are admissible under Rule 803(18) and can be read into evidence (but not admitted as an exhibit), provided that these standards and regulations are established as reliable authorities.

The USCG standards and regulations are also admissible pursuant to Fed. R. 807.[7] The USCG standards have circumstantial guarantees of trustworthiness; they are offered as evidence of a material fact (that the 2011 Yamaha WaveRunner VXS's design complied with industry standards); the regulations are more probative on the issue of compliance with industry standards than any other evidence that can be reasonably obtained; and admitting them will best serve the interests of justice. Thus, they can be admitted under Rule 807 as exhibits. Because the court has

---

[6] Fed. R. Evid. 803(18) provides: "A statement contained in a treatise, periodical, or pamphlet if: (A) the statement is called to the attention of an expert witness on cross-examination or relied on by the expert on direct examination; and (B) the publication is established as a reliable authority by the expert's admission or testimony, by another expert's testimony, or by judicial notice. If admitted, the statement may be read into evidence but not received as an exhibit."

[7] Fed. R. 807 provides: "Under the following circumstances, a hearsay statement is not excluded by the rule against hearsay even if the statement is not specifically covered by a hearsay exception in Rule 803 or 804: (1) the statement has equivalent circumstantial guarantees of trustworthiness; (2) it is offered as evidence of a material fact; (3) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts; and (4) admitting it will best serve the purposes of these rules and the interests of justice. The statement is admissible only if, before the trial or hearing, the proponent gives an adverse party reasonable notice of the intent to offer the statement and its particulars, including the declarant's name and address, so that the party has a fair opportunity to meet it."

found that the USCG regulations are admissible as substantive evidence under either Fed. R. Evid. 803(18) or 807, the court need not reach Defendants' argument concerning the admissibility of the regulations under Fed. R. Evid. 703.

*6.   Dr. Dorris's Testimony Regarding Irrelevant Warnings*

Plaintiff seeks to exclude Dr. Dorris's testimony as irrelevant to the trier of fact under Fed. R. Evid. 702 because she asserts that his opinions are based on interpretations of warnings that are directed at owners, not passengers of PWCs. (ECF No. 65 at 10.)  Defendants argue that Dr. Dorris's testimony is "relevant to both the presence of a defect and the reasonableness of Defendants' actions." (ECF No. 78 at 2.) The core dispute between the parties is the relevance of warnings provided to the owner in the instant action.

Plaintiff's Amended Complaint specifically states that the subject PWC "was defective and unreasonably dangerous because it was placed on the market without adequately warning the users of the watercraft that a passenger could slide or topple off the back of the craft." (ECF No. 19 at 4.) Based on Plaintiff's claim, the court finds that a warnings expert analyzing the available warnings associated with the subject PWC would "help the trier of fact . . . determine a fact in issue"—specifically, whether Plaintiff was adequately warned. Fed. R. 702.

The court notes that Plaintiff does not challenge the relevance of a warnings expert generally or Dr. Dorris's qualifications. That Dr. Dorris's opinions are based on warnings provided generally with the subject PWC, rather than specifically to each individual user, is not grounds for exclusion under Fed. R. Evid. 702. *See, e.g.*, *Holst v. KCI Konecranes Int'l Corp.*, 390 S.C. 29, 44 (S.C. Ct. App. 2010) (finding that the plaintiff's "negligence claim for failure to warn fail[ed] because the evidence in the record reflects [that the defendant] provided proper warnings" to users through the subject product's manual and on decals posted on the subject product). To the extent

that Plaintiff presents evidence that the product warning was inadequate, Plaintiff may properly challenge the adequacy of the warnings and Dr. Dorris's testimony thereof at trial. *See, e.g.*, *Allen v. Long Mfg. NC, Inc.*, 322 S.C. 422, 428 (S.C. Ct. App. 1998) (citing cases) (stating that "the adequacy of a warning is a question for the jury once the plaintiff has presented evidence that the warning is inadequate").

Based on the foregoing analysis Dr. Dorris's testimony regarding warnings is admissible under Fed. R. Evid. 702 in the instant action.

   7. *Expert Testimony about Operation of the PWC by Four People*

Plaintiff argues that expert testimony offered by Defendants that the number of people on the PWC at the time of Plaintiff's accident was a causative factor in her injuries should be excluded because it is irrelevant under Fed. R. Evid. 401 and 402 and more prejudicial than probative under Fed. R. Evid. 403. (ECF No. 65 at 11.) Specifically, Plaintiff argues that the court should exclude evidence that the presence of four riders on the WaveRunner was a causative factor in her injuries because she was not using the seat in contravention of its intended use. (*Id.*) Defendants counter that expert testimony regarding the effects of overloading the PWC is relevant to issues of proximate cause and whether the product was defective when used in its intended manner. (ECF No. 81 at 7.) Defendants argue that, because Plaintiff must prove the defective PWC proximately caused her injuries and must prove the PWC was "'in a defective condition unreasonably dangerous for its *intended* use,'" evidence that the PWC was not used in the manner it was intended to be used and evidence that the number of passengers onboard played a causative role in Plaintiff's injuries is relevant pursuant to Fed. R. Evid. 401. (*Id.* at 7 (quoting *Talkington v. Atria Reclamelucifers Fabrieken BV*, 152 F.3d 254, 263 (4th Cir. 1998)).) Defendants also argue that this

16

expert testimony survives a 403 balancing test because of its high probative value and the failure of Plaintiff to identify any prejudice that would result from its introduction. (ECF No. 81 at 9.)

Here, Mr. Breen's testimony that having four people on a PWC that was designed to carry only three "played a part" in Plaintiff falling off the PWC makes it more probable that Plaintiff was not using the PWC in its intended manner and makes it less probable that the allegedly defective seat was a proximate cause of Plaintiff's injuries. Thus, expert testimony about the causative relationship between the number of passengers and Plaintiff's injuries survives any relevance objections under Fed. R. Evid. 401, 402 and 702(a).

Plaintiff's argument that the fact that she was not using the seat in contravention of its intended use renders Mr. Breen's testimony irrelevant falls short. In his deposition testimony, for example, Mr. Breen admitted that a fourth person on the seat might not have "[a]nything hanging over" and that the person's "entire bottom" "can be" within the area of the sculpted seat, but he also explained that a fourth person would still not be seated "appropriately" and would not be "utilizing that position of the seat as it's really intended to be used, within the sculptured part of it." (ECF No. 81-4.) Mr. Breen also explained: "[R]egardless of whether [Plaintiff] was able to fit on the seat, the lack of space on the seat resulting from the presence of the extra rider and the changes in the riders' positions made Plaintiff's use of the craft improper." (*Id*. at 9.)

Furthermore, any prejudicial effect of Mr. Breen's expert testimony that the number of passengers played a part in Plaintiff falling off the PWC does not outweigh its probative value under Fed. R Evid. 403. As noted above, Mr. Breen's testimony is quite probative on the issues of proximate cause and the existence of a defect when a product is used in its intended manner. Plaintiff has not made any specific argument for why or how this testimony would be prejudicial. Additionally, Mr. Breen's testimony about the effects of "overloading" the PWC is based on the

17

results of surrogate trials involving four persons seated on the same model PWC, (ECF No. 81-4 at 5-8), which show that the position of the fourth passenger is further back than where a third person would normally sit, (*id.* at 6), and document the effects of having an additional passenger on the PWC, (*id*. at 6–8), as well as both laboratory trials and "sea trials" testing the ability of the rearmost passenger on the PWC to maintain her position on the craft when only three passengers are present. (ECF No. 81-3 at 11-12.) Accordingly, Mr. Breen's testimony on the causative relationship between the number of passengers on the PWC and Plaintiff's injuries is admissible.

*8. Expert Testimony about Underage Operator*

Plaintiff argues that expert testimony Defendants offer with regard to the causative relationship between the age of the operator of the PWC and Plaintiff's injuries should be excluded. (ECF No. 65 at 11.) Specifically, Plaintiff argues that testimony that allowing a 10-year-old girl to drive the PWC was a causative factor in Plaintiff's injuries should be excluded because allowing a 10-year-old to drive was in accordance with South Carolina Law and Yamaha's recommendations and because the actions of the driver- accelerating too quickly and being inexperienced- are not age-specific actions. (*Id*. at 12.) Plaintiff points this court to no specific evidence that there is a Yamaha recommendation stating that a minor may operate the PWC if supervised by an adult. Furthermore, the court notes that Plaintiff does not raise any specific evidentiary objection as to why Defendants' expert testimony should be excluded. The court presumes that Plaintiff is objecting to the expert testimony under Fed. R. Evid. 401 and 702.

Defendants oppose Plaintiff's Motion in Limine arguing that expert testimony on the role played by the underage operator in Plaintiff's injuries is relevant and admissible under Fed. R. Evid. 702 because it is probative on issues of proximate cause and the existence of a defect when the PWC was used as intended. (ECF No. 81 at 11.) Expert testimony about the results of studies

18

documenting the "primary causes" of PWC injuries and the negative correlation between the age of PWC operators and the incidence of PWC injuries is relevant under Fed. R. Evid. 401 and 702 because this testimony makes it more probable that the underage driver was a cause of Plaintiff's injuries and more probable that the PWC was not being used as intended—*i.e.*, that it was used by an inexperienced operator. Moreover, the court concludes that Mr. Breen is qualified to render this expert testimony. (*See generally* ECF No. 81-5.) The fact that Plaintiff may have been acting in accordance with South Carolina law when allowing a 10-year-old to drive and that the actions of the underage driver may not have been age specific does not render this testimony irrelevant. Defendants' expert testimony about the results of studies involving the age of operators of PWCS is admissible. Defendants' experts is limited to testifying about the results of these studies and should refrain from stating an opinion that the 10-year-old driver caused Plaintiff's injuries. Testimony that the age of the operator was a causative factor in Plaintiff's injuries is not based on sufficient evidence and is likely to be unfairly prejudicial to Plaintiff.

## IV.     CONCLUSION

Based on the aforementioned reasons, the court hereby **GRANTS IN PART** and **DENIES IN PART** Plaintiff's Motion in Limine to Exclude Defendants' Expert Opinions (ECF No. 65).

**IT IS SO ORDERED.**

*J. Michelle Childs*

United States District Judge

July 29, 2016
Columbia, South Carolina