**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**ANDERSON/GREENWOOD DIVISION**

| | | |
|---|---|---|
| Deborah Meek Hickerson, | ) | |
| | ) | Civil Action No. 8:13-cv-02311-JMC |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER AND OPINION** |
| | ) | |
| Yamaha Motor Corporation, U.S.A., and | ) | |
| Yamaha Motor Co., Ltd., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This matter is before the court on the Motion for Summary Judgment of Defendants Yamaha Motor Corporation, U.S.A. and Yamaha Motor Co., Ltd. (collectively "Defendants"). (ECF Nos. 70, 70-1.) Plaintiff Deborah Meek Hickerson ("Plaintiff") opposes Defendants' Motion. (ECF No. 92.) For the reasons set forth herein, the court **GRANTS** Defendants' Motion for Summary Judgment. (ECF Nos. 70, 70-1.)

## I.    JURISDICTION

 Plaintiff is a citizen and resident of South Carolina. (ECF No. 19.) Defendants are corporations organized and existing under the laws of a state outside of South Carolina. (*See* ECF Nos. 22, 26.) This court has diversity jurisdiction under 28 U.S.C. § 1331 (2012) (providing that a federal district court only has "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000 . . . and is between . . . citizens of different States . . . .").

## II.    RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff explains that on or about June 30, 2012, she attended a gathering with friends on South Carolina's Lake Hartwell, where individuals had been riding Yamaha VXS WaveRunners,

personal watercrafts ("PWCs"), as part of the activities. Plaintiff also decided to ride one of the PWCs at a later time after she arrived. The PWC on which Plaintiff decided to ride contained an orange, black, and white warning label located below the handlebars in front of the PWC's operator. The warning stated, in part:

> WEAR PROTECTIVE CLOTHING: SEVERE INTERNAL INJURIES CAN OCCUR IF WATER IS FORCED INTO BODY CAVITIES AS A RESULT OF FALLING INTO WATER OR BEING NEAR JET THRUST NOZZLE. NORMAL SWIMWEAR DOES NOT ADEQUATELY PROTECT AGAINST FORCEFUL WATER ENTRY INTO RECTUM OR VAGINA. ALL RIDERS MUST WEAR A WET SUIT BOTTOM OR CLOTHING THAT PROVIDES EQUIVALENT PROTECTION (SEE OWNER'S MANUAL).

(ECF No. 70-5 at 3.) Beside that specific warning was an image of a person with clothing labeled as a "wet suit bottom." (*Id.*)

Toward the rear of the PWC was a second warning, which stated:

> WARNING: SEVERE INTERNAL INJURIES CAN OCCUR IF WATER IS FORCED INTO BODY CAVITIES AS A RESULT OF BEING NEAR JET THRUST NOZZLE. WEAR A WETSUIT BOTTOM OR CLOTHING THAT PROVIDES EQUIVALENT PROTECTION. DO NOT BOARD PWC IF OPERATOR IS APPLYING THROTTLE.

(*Id.*)

Plaintiff, wearing a bikini, proceeded to ride the PWC as a passenger with three other individuals without having read any of these warnings. (*See generally* ECF No. 70-2 at 4.) After Plaintiff was seated on the PWC, the driver accelerated, causing Plaintiff, the rearmost passenger, to fall off the back of the PWC and into the jet stream. The jet stream, which was propelling the PWC, caused Plaintiff to sustain very serious injuries to her anus, rectum, perineum, and vagina. (*See* ECF No. 19.)

Alleging that the product included inadequate warnings and was defectively designed, Plaintiff brought this products liability action against Defendants under claims of strict liability and negligence as well as a claim for breach of warranty. (*See generally id.*)

### III.     LEGAL STANDARD

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248–49 (1986). A genuine question of material fact exists where, after reviewing the record as a whole, the court finds that a reasonable jury could return a verdict for the nonmoving party. *Newport News Holdings Corp. v. Virtual City Vision*, 650 F.3d 423, 434 (4th Cir. 2011).

In ruling on a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123–24 (4th Cir. 1990). The non-moving party may not oppose a motion for summary judgment with mere allegations or denial of the movant's pleading, but instead must "set forth specific facts" demonstrating a genuine issue for trial. Fed. R. Civ. P. 56(e); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *Shealy v. Winston*, 929 F.2d 1009, 1012 (4th Cir. 1991). All that is required is that "sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 249. "Mere unsupported speculation . . . is not enough to defeat a summary judgment motion." *Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 62 (4th Cir. 1995).

"When considering motions from both parties for summary judgment, the court applies the same standard of review and so may not resolve genuine issues of material fact." *Monumental Paving & Excavating, Inc. v. Pa. Mfrs.' Ass'n Ins. Co.*, 176 F.3d 794, 797 (4th Cir. 1999) (citation omitted). "Instead, . . . [the court] consider[s] and rule[s] upon each party's motion separately and determine[s] whether summary judgment is appropriate as to each under the Rule 56 standard." *Id.* (citation omitted).

## IV.    ANALYSIS

In South Carolina, "[t]here are three defects a plaintiff in a products liability lawsuit can allege: 1) a manufacturing defect, 2) a warning defect, and 3) a design defect." *Watson v. Ford Motor Co.*, 699 S.E.2d 169, 174 (S.C. 2010). "When a manufacturing defect claim is made, a plaintiff alleges that a particular product was defectively manufactured." *Id.* "When a warning defect claim is made, a plaintiff alleges that he was not adequately warned of dangers inherent to a product." *Id.* Finally, "[w]hen a design defect claim is made, a plaintiff alleges that the product at issue was defectively designed, thus causing an entire line of products to be unreasonably dangerous." *Id.* Here, Plaintiff asserts her claims based on inadequate warnings and a design defect.

### A.  Inadequate Warnings

The court begins its analysis by addressing Plaintiff's claims of Defendants' inadequate PWC warnings. As part of her strict liability claim, Plaintiff alleges that the PWC was "defective and unreasonably dangerous because it was placed on the market without adequately warning the users." (ECF No. 19 at 4.) Plaintiff specifically notes that PWC's warnings were "small, inconspicuous, hidden within a barrage of warnings, unclear, nonspecific, vague and therefore, in violation of ANSI standards and entirely inadequate to provide the protection needed by

4

passengers invited to ride on such a watercraft." (*Id.*) Plaintiff similarly alleges in support of her negligence claim that Defendants were negligent in "plac[ing] a product on the market without adequately warning its users" because it was "well known that the warnings provided did not comply with ANSI standards, and that the warnings could have been placed in better, more conspicuous locations, and incorporated much clearer language which would convey the true extent of the risks involved." (*Id.* at 5–6.)

South Carolina courts have explained that a products liability case like the instant action "may be brought under several theories, including negligence, strict liability, and warranty." *Bragg v. Hi-Ranger, Inc.*, 462 S.E.2d 321, 325–26, (S.C. Ct. App. 1995). In a products liability case based on the theory of strict liability, a plaintiff must show that: (1) the product injured him; (2) the product, when the accident occurred, was in essentially the same condition as when it left defendant, who is in the business of selling such a product; and (3) the plaintiff sustained the injury because the product was in an unreasonably dangerous, defective condition. *Harris v. Rose's Stores, Inc.*, 433 S.E.2d 905 (S.C. Ct. App. 1993). Under a negligence theory, the plaintiff bears the additional burden of demonstrating that a defendant did not exercise due care in some respect; unlike strict liability, "the focus is on the conduct of the seller or manufacturer, and liability is determined according to fault." *Madden v. Cox*, 328 S.E.2d 108, 112 (S.C. Ct. App. 1985).

"In order to prevent a product from being unreasonably dangerous, the seller may be required to give a warning on the product concerning its use." *Anderson v. Green Bull, Inc.*, 471 S.E.2d 708, 710 (S.C. Ct. App. 1996). "Generally, the question of the adequacy of the warning is one of fact for the jury as long as evidence has been presented that the warning was inadequate." *Brewer v. Myrtle Beach Farms Co., Inc.*, No. 2005-UP-508, 2005 WL 7084354, at *3 (S.C. Ct.

App. Aug. 30, 2005) (citing *Allen v. Long Mfg. NC, Inc.*, 505 S.E.2d 354, 357 (S.C. Ct. App. 1998)).

Defendants assert that expert testimony evidence is necessary in the instant action to determine the standard for adequacy of warnings because South Carolina law requires expert evidence where "'a factual issue must be resolved with scientific, technical, or any other specialized knowledge.'" (ECF No. 71-9 at 9 (quoting *Watson v. Ford Motor Co.*, 699 S.E.2d 169, 175 (S.C. 2010)).). Because the adequacy of warnings in products liability cases tend to implicate the study of human factors and other industry standards, this court agrees that expert testimony is perhaps the most appropriate form of evidence to support Plaintiff's claims since those areas are generally beyond the common knowledge of a jury. Fed. R. Evid. 702(a); *see also Watson*, 699 S.E.2d at 445; *Babb v. Lee County Landfill SC, LLC*, 747 S.E.2d 468, 481 (S.C. 2013) (stating that the requirement of expert testimony is a "fact-specific inquiry that can only be made on a case-by-case basis").

The primary evidence Plaintiff presented here to support her inadequate warnings claims was, in fact, in the form of expert testimony from Dr. Anand Kasbekar. (*See generally* ECF No. 92.) Plaintiff's expert, Dr. Anand Kasbekar, specifically provided this opinion in his report on the warnings adequacy issue:

> To the extent the Defendants rely upon the use of warnings/education to inform users and in particular passengers of the danger of . . . foreseeable injuries and explain or instruct users on how to reduce or minimize such injury by clothing, operation, and passenger action, the warnings and instructions used by the defendants are inadequate and insufficient given the potential for extremely serious injuries.

(ECF No. 71-12 at 2.) While this court determined that Dr. Kasbekar was qualified as an expert to issue this opinion, (ECF No. 104 at 6–7), it concluded that his proposed warnings system— which he developed ostensibly to ground his expert opinion that the product's warnings were

6

"inadequate and insufficient"—should be excluded due to its unreliability under the standards of Fed. R. Evid. 702. (*Id.* at 9–10 (pointing to the fact that "not only has Dr. Kasbekar not tested his proposed alternative warning system, but also [that] he provides no specific relevant research or studies—in neither his deposition testimony or his report—on which he relies . . . .").)

Again, it was Dr. Kasbekar's expert opinion that Plaintiff offered as evidence to support her inadequate warnings allegations. (*See, e.g.*, ECF No. 92 at 6.) Because this court deemed Dr. Kasbekar's warnings opinion unreliable and therefore excluded it as evidence, this court is now hard-pressed to discern a "genuine dispute as to any material fact" for Plaintiff to show in order to withstand Defendants' Motion for Summary Judgment with respect to her warnings claims. Fed. R. Civ. P. 56(a). More specifically, outside of the warnings expert testimony, there is little to no evidence in the record on which this court can rely to conclude that there is a genuine factual dispute as to whether the product was "unreasonably dangerous" based on Defendants' failure to provide an adequate warning concerning the product's use. *See Anderson v. Green Bull, Inc.*, 471 S.E.2d 708, 710 (S.C. Ct. App. 1996).

As part of her strict liability and negligence claims, Plaintiff alleges that what made the WaveRunner "defective and unreasonably dangerous" was that it did not warn the "users" of the watercraft that a passenger could fall off the rear of the craft "directly into the path of an extremely dangerous jet of water which was likely to inflict severe and permanent damage to human tissue and organs." (ECF No. 19 at 5.) Defendants present evidence that the PWC warnings consist of uniform labels that major manufacturers of the PWC industry developed and that the United States Coast Guard approved. (*See* ECF No. 76-4 at 14.) Defendants also present evidence that the Boating Safety Advisory Council has "specifically reviewed and evaluated" the PWC's uniform labeling. (*Id.* at 8.) Notwithstanding this evidence, the plain language of the multiple warnings,

both near the front and rear part of the PWC, *see supra*, reasonably advise anyone who rides the PWC, including a passenger, of the very types of dangers Plaintiff endured and moreover provides specific recommendations to prevent such injuries.

By comparison, consider the facts of *Alford v. Lowe's Home Centers, Inc.*, No. 8:13-1787-BHH, 2014 WL 5305825, at *1 (D.S.C. Oct. 15, 2014), for example. There, the plaintiff purchased a rope from a manufacturer to use as his "lifeline" for tree climbing. *Id.* The rope's labeling contained this warning:

> WARNING: Avoid using a knot, splicing is preferable. Knots reduce the strength of the rope up to 40%. Do not use this product where personal safety can be endangered. The working loads shown above should never be exceeded. Never stand in line with rope under tension; such a rope, particularly a nylon rope, may recoil (snap back). Misuse can result in serious injury or death.

*Id.* The plaintiff in that case climbed a tree and tied the rope he purchased around a branch for support. *Id.* Carrying a chain saw to cut down limbs, he reached the top of the tree and detached all other ropes, except for the rope in dispute, that were securing him to the tree. *Id.* When the plaintiff stepped out on a tree branch and fell, the rope broke, and the plaintiff fell nearly 50 feet to the ground. *Id.*

The plaintiff sued the defendant, claiming that the rope's warning was inadequate for "vagueness and lack of specificity." *Id.* at *3. The court "personally d[id] not believe there exists significant ambiguity in the pictorial imaging or the phrase '[d]o not use this product where personal safety can be endangered,' especially relative to the subject conduct involved—tree scaling." *Id.* Nonetheless, the court reluctantly denied summary judgment because the plaintiff provided evidence in the form of a human factors expert testimony as to the deficiency and inadequacy of the label and even still noted: "It is an issue of fact, therefore, but barely." *Id.* at *4.

Especially without such expert testimony here to support Plaintiff's claims of inadequate warnings, it would be difficult for this court to accept that a jury could find that the warnings' direct and specific verbiage and its multiple locations on both the front and rear parts of the PWC rendered them inadequate. *See, e.g.*, *Phelan v. Synthes*, 35 Fed. App'x 102, 109 (4th Cir. 2002) (per curiam) (affirming the District Court of South Carolina's exclusion of expert testimony and subsequent directed verdict that the product's warning was adequate as a matter of law because the plaintiff's argument regarding the warning's inadequacy was "not supported by the text" of the warning because the warning "clearly spells out" the danger that contributed to plaintiff's injuries).

Moreover, for purposes of summary judgment, the evidence does not clearly support that a more adequate warning would have mattered anyway—that is, that the inadequate warnings caused her injuries, something Plaintiff would have to prove for her strict liability and negligence claims. For example, in her deposition testimony, Plaintiff readily states that she did not read the warnings the PWC included, warnings that specifically addressed the type of injuries Plaintiff sustained. (ECF No. 70-2 at 14.) *See Andrews v. Buckman Laboratories, Inc.*, 181 F.3d 86, 1999 WL 321526 (4th Cir. 1999) (noting the plaintiff's statement that he did not look at posted warnings for employees because he believed "he had no reason to" and concluding that, under South Carolina law, the plaintiff's failure to read the warnings "preclude[d] the causal link" between the warnings and his injuries); *Allen v. Long Mfg. NC, Inc.*, 505 S.E.2d 354, 357 (S.C. Ct. App. 1998) (stating that "[t]he plaintiff has the burden of showing that a warning would have made a difference in the conduct of the person warned"). There is no basis left for accepting Plaintiff's explanation, in response, that this is not a case about ignoring a warning, but rather about the fact that "there is no warning located near the passenger to ignore." (ECF No. 92 at 6, 8 (referencing Dr. Kasbekar's opinions as to the adequacy of the warnings regarding its location.) Further compromising

Plaintiff's allegation that the warning's locations make them inadequate such that they caused her injuries is her statement that she is not sure whether she would have changed her behavior if she had read the warning.  (ECF No. 92 at 7–8 (citing ECF No. 92-4 at 7).)  *See Wehling v. Sandoz Pharmaceuticals Corp.*, 162 F.3d 1158, No. 97-2212, 1998 WL 546097, at *4–5 (4th Cir. Aug. 20, 1998) (table decision) (stating that "[t]o create a jury question, the evidence must be of sufficient weight to establish, by the preponderance of the evidence, at least some reasonable likelihood that an adequate warning would have prevented" the incident with the product). Plaintiff did ultimately intimate in her deposition testimony that had she read the warning on protective clothing, she would "change how [she] got on a jet ski today."[1] (ECF No. 92-4 at 8.) But, the PWCs included warnings on the issue of wet suit bottoms and protective clothing, *see supra*—warnings Plaintiff admits she did not read.  There is no evidence on which this court can rely to support Plaintiff's conclusion that "passengers do not see, and cannot read the warning from the respective seat positions."  (ECF No. 92 at 5.)

In sum, this court finds that Plaintiff lacks "sufficient evidence supporting the claimed factual dispute . . . to require a jury or judge to resolve the parties' differing versions" of whether the warnings are inadequate.  *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 249 (1986); *see also Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 62 (4th Cir. 1995) ("Mere unsupported speculation . . . is not enough to defeat a summary judgment motion."). This court therefore grants Defendants' Motion for Summary Judgment on Plaintiff's negligence and strict liability claims to the extent that those claims are grounded in allegations that Defendants failed to provide an adequate warning for its product.

---

[1] Plaintiff's testimony that a reading of the warning would change how she got on the jet ski today also seems to conflict somewhat with her assertion that the warnings regarding the wet suit and protective clothing were "confusing at best." (ECF No. 92 at 5.)

B.  Design Defect

Having determined that Plaintiff lacks sufficient proof to support her allegations of inadequate warnings, the court turns next to the design defect allegations that support her negligence, strict liability, and breach of warranty claims.

South Carolina law is clear that "[i]f a warning is given which, if followed, makes the product safe for use, the product cannot be deemed defective or unreasonably dangerous." *Allen v. Long Mfg. NC, Inc.*, 505 S.E.2d 354, 357 (S.C. Ct. App. 1998).  More specifically, South Carolina continues to follow comment j to Section 402A of the *Restatement (Second) of Torts* (1965)[2] for the conclusion that a product "is not unreasonably dangerous if accompanied by adequate warnings that, if followed, make the product safe for use."[3] *Curcio v. Caterpillar, Inc.*,

---

[2] "A seller may prevent a product from being 'unreasonably dangerous' if the seller places an adequate warning on the product regarding its use. If a warning is given which, if followed, makes the product safe for use, the product cannot be deemed defective or unreasonably dangerous."

[3] *But see Eskridge v. Pacific Cycle, Inc.*, 556 Fed. App'x 182, 188–89 (4th Cir. 2014 (assessing the merits of adopting instead section 2(b) of the *Restatement (Third) of Torts—Products Liability* (1998).)  In *Eskridge*, the Court of Appeals for the Fourth Circuit, absent clear West Virginia law on which to rely otherwise, opined that the Supreme Court of Appeals of West Virginia in that case would likely find that an adequate warning does not shield a seller from liability if the seller failed to adopt a design that provided better protection than a warning.  *Id.* The Fourth Circuit evaluated the section of the *Restatement (Third)* it found persuasive:

> Comment *l* to section 2 provides that "[i]n general, when a safer design can reasonably be implemented and risks can reasonably be designed out of a product, adoption of the safer design is required over a warning that leaves a significant residuum of such risks." Indeed, Illustration 14 in that section of the Restatement is quite pertinent to the facts before us here. That illustration discusses the hypothetical example of a garbage truck's compaction chamber that warns in large letters on its outside panels "DANGER—DO NOT INSERT ANY OBJECT WHILE COMPACTION CHAMBER IS WORKING—KEEP HANDS AND FEET AWAY." The illustration notes that "[t]he fact that adequate warning was given does not preclude [a worker who falls into the machine] from seeking to establish" that the compactor was defectively designed by virtue of the fact that there was no guard to prevent such an accident. Similarly . . . we conclude that the Supreme Court of Appeals of West Virginia would hold that despite the fact that users can be and were instructed regarding how to use the [product], that does not

11

543 S.E.2d 264, 268–69 (S.C. Ct. App. 2001) (rejecting Plaintiff's urge that the South Carolina appellate court adopt the *Restatement (Third) of Torts* (1998)'s position allowing recovery based on defective design even with an adequate warning), *rev'd on other grounds*, 355 S.E.2d 272 (S.C. 2003 (reversing the trial court because it "improperly weighed . . . evidence rather than merely considering its existence" in granting the JNOV motion on the inadequate warning theory); *see also Claytor v. General Motors Corp.,* 277 S.C. 259, 286 S.E.2d 129, 132 (1982) (stating that if products are "properly prepared, manufactured, packaged and accompanied with adequate warnings and instructions, they cannot be said to be defective" and going on to conclude that "[t]o hold otherwise would discourage the marketing of many products because some danger attends their use").

In *Curcio v. Caterpillar, Inc.*, 543 S.E.2d 264, 267–68, (S.C. Ct. App. 2001), for example, the appellate court considered the fact that the personal representative of a deceased mechanic's estate had sued a track-loader manufacturer under negligence and strict liability claims at the trial level. *Id.* Upon a jury verdict in favor of the plaintiff, the trial court had set aside the defective design claim after determining that the warnings were adequate as a matter of law. *Id.* The

---

protect the seller, as a matter of law, from liability for failing to adopt a design that would have provided significantly better protection than any warning could.

*Id.* (citing *Sturm, Ruger & Co. v. Day,* 594 P.2d 38, 44 (Ala. 1979) ("Where the most stringent warning does not protect the public, the defect itself must be eliminated if the manufacturer is to avoid liability."), *modified,* 615 P.2d 621 (Ala. 1980), *overruled on other grounds by Dura Corp. v. Harned,* 703 P.2d 396, 405 n. 5 (Ala. 1985); *Uloth v. City Tank Corp.,* 384 N.E.2d 1188, 1192 (1978) ("Whether or not adequate warnings are given is a factor to be considered on the issue of negligence, but warnings cannot absolve the manufacturer or designer of all responsibility for the safety of the product."); David G. Owen, *Warnings Don't Trump Design: The Rise and Fall of § 402A Comment j,* 153 Products Liability Advisory 1 (Nov. 2001); Howard Latin, "*Good" Warnings, Bad Products, and Cognitive Limitations,* 41 U.C.L.A. L. Rev. 1193, 1295 (June 1994) ("Good product warnings may be useful, indeed necessary, in many accident-prevention settings but their value is inherently limited and they consequently should not be treated as legally acceptable alternatives to safer product designs and marketing strategies.")).

appellate court observed: "In determining that an adequate warning made the loader safe for use in spite of any alleged defects, the trial court relied on comment j to Section 402A of the Restatement (Second) of Torts, as interpreted in *Allen* [*v. Long Mfg. NC, Inc.*, 505 S.E.2d 354, 357 (S.C. Ct. App. 1998)]." *Id.* at 269. The appellate court affirmed the trial court and rejected the plaintiff's claim that "irrespective of the efficacy of the warnings . . . she presented sufficient evidence at trial [in the form of an alternative design]" such that there was "an issue of fact as to whether the loader was defectively designed and therefore unreasonably dangerous." *Id.* at 269, *rev'd on other grounds*.

In *Aldana v. RJ Reynolds Tobacco Co.*, No. 2:06—366—CWH, 2007 WL 3020497, at *4–5 (D.S.C. Oct. 12, 2007), the plaintiff also alleged design defects to support her product liability and negligence claims. The District Court of South Carolina, citing *Curcio*, dismissed the plaintiff's claims because it found that the warning's compliance with a federal act demonstrated that they were adequate as a matter of law; the court therefore also had to dismiss the plaintiff's design defect claims under South Carolina law. *Id.* (citing *Curcio*, 543 S.E.2d at 268).

This court—sitting in diversity and therefore guided by South Carolina law—is similarly compelled to grant Defendants' Motion for Summary Judgment with respect to Plaintiff's design defect claims given the determination, *supra*, that the product's warnings are adequate as a matter of law. *Compare, e.g.*, *Phelan v. Synthes*, 35 Fed. App'x 102, 109 (4th Cir. 2002) (per curiam) (disallowing the defendant's design defect claims under South Carolina law after affirming the District Court of South Carolina's exclusion of expert testimony and subsequent directed verdict that the product's warning was adequate as a matter of law based on the warning's text that "clearly spell[ed] out" the danger), *with Campbell v. Gala Indus., Inc.*, No. Civ.A.6:04-2036-RBH, 2006 WL 1073796, at *3 (D.S.C. Apr. 20, 2006) (denying summary judgment after declining to accept

13

defendant's argument that the product's warnings were adequate and therefore not defective under South Carolina law because a human factors expert presented reliable evidence that the product's warnings were inadequate).

Moreover, proof of a defective condition is necessary to make out a strict liability claim based on products liability, *Allen*, 505 S.E.2d at 356; a negligence claim based on products liability, *id.* at 356 (stating that "proof that the manufacturer breached its duty to exercise reasonable care to adopt a safe design"); and a breach of warranty claim based on product liability, *id.* (citing *Doty v. Parkway Homes Co.*, 368 S.E.2d 670, 671 (1988)). Because South Carolina law precludes this court from finding that the PWC was defective if the warnings are adequate, this court therefore specifically grants Defendants' Motion for Summary Judgment as to Plaintiff's strict liability, negligence, and breach of warranty claims.

Citing *Allen v. Long Mfg. NC, Inc.*, 505 S.E.2d 354 (S.C. Ct. App. 1998), Plaintiff suggests that only where a "manufacturer concedes it [sic] product is dangerous [can] the product . . . be made safe by an adequate warning," and that Defendants provide no such concessions here. (ECF No. 92 at 8.) But, as Defendants note in their Reply, "the only inference of any import to be made from a finding that a given warning is adequate is that the product is 'not in a defective condition unreasonably dangerous.'" *Curcio*, 543 S.E.2d at 276 (internal quotation marks and citation omitted). As to Defendants' specific argument, the *Allen* court did not create a brightline rule that an adequate warning makes safe only those products a defendant "concedes" is dangerous. *Allen*, 505 S.E.2d at 359 (observing that the fact that the defendant had conceded the product was dangerous mooted the lower court's determination that the defendant was required to present a feasible alternative design to survive summary judgment on its design defect claims). And comment j of Section 402A of the *Restatement (Second) of Torts* (1965), again which South

14

Carolina still follows, does not appear to contemplate Plaintiff's argument; instead it simply provides: "A seller may prevent a product from being 'unreasonably dangerous' if the seller places an adequate warning on the product regarding its use. If a warning is given which, if followed, makes the product safe for use, the product cannot be deemed defective or unreasonably dangerous."

Because the court concludes based on the evidence before it that the warnings Defendants provided were adequate as a matter of law, it must also conclude that Defendants prevented the product from being defective and unreasonably dangerous such that Defendants are entitled to summary judgment as to Plaintiff's claims for breach of warranty, negligence, and strict products liability.

## V.    CONCLUSION

Based on the aforementioned reasons, the court hereby **GRANTS** Defendants' Motion for Summary Judgment (ECF Nos. 70, 70-1).

**IT IS SO ORDERED.**

J. Michelle Childs

United States District Judge

August 15, 2016
Columbia, South Carolina