**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**ANDERSON/GREENWOOD DIVISION**

| | | |
|---|---|---|
| Deborah Meek Hickerson, | ) | |
| | ) | Civil Action No.: 8:13-cv-02311-JMC |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER AND OPINION** |
| | ) | |
| Yamaha Motor Corporation, U.S.A., and | ) | |
| Yamaha Motor Co., Ltd., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

      This matter is before the court on Plaintiff Deborah Meek Hickerson's ("Plaintiff") Fed. R. Civ. P. 59(e) motion to alter or amend the court's previous order granting summary judgment to Defendants Yamaha Motor Corporation, U.S.A., and Yamaha Motor Co., Ltd. ("Defendants"). (ECF No. 110.) The motion has been fully briefed (*see id.*; ECF Nos. 112, 114, 120), and, for the reasons below, the court **DENIES** the motion.

## I. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

### A. Underlying facts

      This is a products liability case involving Yamaha VXS WaveRunner personal watercrafts ("PWCs"), which are designed and manufactured by Defendants. On or about June 30, 2012, Plaintiff attended a gathering with friends at Lake Hartwell in South Carolina, where individuals were riding the PWCs as part of the activities. Later that day, Plaintiff decided to ride one of the PWCs, which contained an orange, black, and white warning label located below the handlebars in front of the PWC's operator. The warning stated, in part:

      WEAR PROTECTIVE CLOTHING: SEVERE INTERNAL INJURIES CAN
      OCCUR IF WATER IS FORCED INTO BODY CAVITIES AS A RESULT
      OF FALLING INTO WATER OR BEING NEAR JET THRUST NOZZLE.

> NORMAL SWIMWEAR DOES NOT ADEQUATELY PROTECT AGAINST FORCEFUL WATER ENTRY INTO RECTUM OR VAGINA. ALL RIDERS MUST WEAR A WET SUIT BOTTOM OR CLOTHING THAT PROVIDES EQUIVALENT PROTECTION (SEE OWNER'S MANUAL).

(ECF No. 70-5 at 3.) Beside that specific warning was an image of a person with clothing labeled as a "wet suit bottom." (*Id.*)

Toward the rear of the PWC was a second warning, which stated:

> WARNING: SEVERE INTERNAL INJURIES CAN OCCUR IF WATER IS FORCED INTO BODY CAVITIES AS A RESULT OF BEING NEAR JET THRUST NOZZLE. WEAR A WETSUIT BOTTOM OR CLOTHING THAT PROVIDES EQUIVALENT PROTECTION. DO NOT BOARD PWC IF OPERATOR IS APPLYING THROTTLE.

(*Id.*)

Plaintiff, wearing a bikini, proceeded to ride the PWC as the rearmost passenger along with three other individuals without having read any of these warnings. (*See generally* ECF No. 70-2 at 4.) After Plaintiff was seated on the PWC, the driver accelerated, causing Plaintiff to fall off the back of the PWC and into the jet stream. The jet stream, which was propelling the PWC, caused serious injuries to Plaintiff's anus, rectum, perineum, and vagina. (*See* ECF No. 19.)

Alleging that the PWC included inadequate warnings and was defectively designed, Plaintiff filed suit against Defendants alleging claims of strict liability and negligence as well as a claim for breach of warranty. (*See generally id.*)

**B. Order granting in part motion *in limine* to exclude expert testimony**

After discovery, Defendants filed a motion *in limine* to exclude the testimony of Plaintiff's expert witness, Dr. Anand Kasbekar (ECF No. 71), which, on July 29, 2016, the court granted in part and denied in part (ECF No. 104). Because disposition of a good portion of the instant motion depends upon a correct understanding of the court's prior order deciding the motion *in limine*, a

summary of that order is set forth here. Regarding warning labels, the court understood Plaintiff to anticipate that Dr. Kasbekar would present two lines of testimony. First, Dr. Kasbekar would testify that the warnings on the PWC at issue in this case were inadequate because they should "be shorter, moved to the rear part of the jet ski seat, and should include a graphic with the rider wearing wet suit bottoms of a different color." (ECF No. 104 at 5 (citing ECF No. 71-7 at 55).) Dr. Kasbekar, the court noted, had summarized his opinion in his report as follows:

> "To the extent the Defendants rely upon the use of warnings/education to inform users and in particular passengers of the danger of . . . foreseeable injuries and explain or instruct users on how to reduce or minimize such injury by clothing, operation, and passenger action, the warnings and instructions used by the defendants are inadequate and insufficient given the potential for extremely serious injuries."

(*Id.* (quoting ECF No. 71-12 at 2).) Second, in addition to "opini[ng] on the inadequacy of the [PWC]'s warning," Dr. Kasbekar would also testify regarding "his proposal for an alternative warning system in this case." (*Id.* at 8.)

Defendants argued that Dr. Kasbekar's testimony regarding such opinions should be excluded for two reasons—because Dr. Kasbekar is not qualified to offer warnings opinions and because his warnings opinions were unreliable under *Daubert*.[1] (*Id.* at 4 (citing ECF No. 71-1 at 7-10, 15-24).) The court disagreed with Defendants' first argument, concluding that the evidence Defendants pointed to was "not enough to exclude Dr. Kasbekar's warnings opinion testimony on the grounds that he is not qualified" and that, "[i]nsofar as Dr. Kasbekar['s] expert testimony would consist of the conclusions he makes in his report, the court finds that he is qualified to issue those opinions in the form of expert testimony." (*Id.* at 6-7.)

---

[1] *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).

3

Proceeding to the other requirements for the admission of expert testimony, the court agreed with Defendants' second argument—that Dr. Keskebar's warnings opinion testimony should be excluded as unreliable. (*Id.* at 7-10.) Defendants rightly observed that Dr. Kasbekar did not test his proposed warning system and that he cited no studies to support his opinions, and they argued for application of a brightline rule excluding opinion testimony in such circumstances. (*See* ECF No. 71-1 at 23-24.) The court rejected a brightline approach, concluding, instead, that the absence of testing is one important factor, among others, in determining the reliability of expert testimony on a proposed warning system. (ECF No. 104 at 8-9 (citing *Thomas v. Bombardier Recreational Prods., Inc.*, 2010 WL 4188308, at *6 (M.D. Fla. 2010); *Jaurequi v. John Deere Co.*, 971 F. Supp. 416, 428–29 (E.D. Mo. 1997)).) Nonetheless, taking this factor into account, the court determined that Dr. Kasbekar's opinion testimony was not reliable under *Daubert*. Although the court noted that "[t]o inform both his opinion on the inadequacy of the [PWC]'s warning and his proposal for an alternative warning system," Kasbekar relied on work by Dr. Mike Maddox and Dr. Edward Karnes (*id.* at 8), this was not enough. In reaching its conclusion, the court explained that

> not only has Dr. Kasbekar not tested his proposed alternative warning system, but also he provides no specific relevant research or studies—in neither his deposition testimony nor his report—on which he relies to inform his proposed warnings system or his opinion that the warnings are inadequate and insufficient. For example, he specifically acknowledges, himself, that he cites no authoritative piece of research that would indicate that warnings on the seat would be read more than warnings on the craft itself. Moreover, Dr. Kasbekar stated in his deposition testimony that 1) he does not feel qualified to author a warning from start to finish that would be ready to be placed on a product; 2) he has never authored any articles on warnings; and 3) he knows of no other PWC manufacturer that has a warning on the seat like he proposes.
>
> Plaintiff's response that Dr. Kasbekar relies on years of experience, classes and education, and knowledge to develop his proposed warning system opinion, does not overcome what this court deems as deficiencies under

4

*Daubert*'s standard for reliability for him to be able to opine to a jury the opinion he proffers in his report . . . .

(*Id.* at 9-10 (internal citations and quotation marks omitted).)

Although, in much of this analysis, the court applied its reasoning to both lines of Dr. Kasbekar's anticipated testimony—*i.e.*, his opinion that the PWC's warnings were inadequate and his opinion regarding his proposed warning system—the order did not specifically exclude testimony from Dr. Kasbekar that the PWC's warnings were inadequate. Instead, the court "conclude[d] that Dr. Kasbekar's proposed warning system opinion is not 'based upon sufficient facts or data' and is not 'the product of reliable principles and methods.'" (*Id.* at 10 (quoting Fed. R. Evid. 702).) Thus, although it is clear that the court's order excluded Dr. Kasbekar's opinion testimony as to his proposed warning system, it is not clear that it excluded his opinion testimony as to the inadequacy of the PWC's warning. (*See id.* at 10 (granting motion "with respect to Dr. Kasbekar's proposed warnings system opinion"); *id.* at 17 ("Specifically, Dr. Kasbekar's testimony as to the proposed warnings opinion will be excluded.").) [2]

## C. Order granting motion for summary judgment

On the same day they filed their motion *in limine*, Defendants also filed a motion for summary judgment (ECF No. 70.), which the court later granted by an August 16, 2016 order (ECF No. 106). The court's order granting Defendants' summary judgment motion is the subject of Plaintiff's instant Rule 59(e) motion to alter or amend.

---

[2] The motion *in limine* also sought to exclude Dr. Kasbekar's "testimony regarding his examination and testing of [a reasonable alternative] design [for the PWC's seat] as well as his proposal of that design as one that would have prevented Plaintiff's injuries." (ECF No. 104 at 2 (citing ECF No. 83 at 6-7, 10-12.) The court denied the motion to the extent it sought to exclude Dr. Kasbekar's testimony regarding his defective design opinions. (*See id.* at 10-17.)

1. Inadequate warnings claims

The court began its analysis by addressing Plaintiff's negligence and strict liability claims based on the PWC's allegedly inadequate warnings and concluded that Plaintiff had failed to adduce sufficient evidence to support such claims. (*Id.* at 4-10.) The court reached this conclusion for two reasons.

First, the court concluded that Plaintiff had failed to adduce sufficient evidence that the warnings were inadequate. (*Id.* at 5-9.) Under South Carolina law, "'[g]enerally, the question of the adequacy of the warning is one of fact for the jury as long as evidence has been presented that the warning was inadequate.'" *Brewer v. Myrtle Beach Farms Co., Inc.*, No. 2005-UP-508, 2005 WL 7084354, at *3 (S.C. Ct. App. Aug. 30, 2005). The court noted that, "[b]ecause the adequacy of warnings in products liability cases tend to implicate the study of human factors and other industry standards, . . . expert testimony is perhaps the most appropriate form of evidence to support Plaintiff's claims since those areas are generally beyond the common knowledge of a jury." (ECF No. 106 at 6 (citing Fed. R. Evid. 702(a); *Watson v. Ford Motor Co.*, 699 S.E.2d 169, 175 (S.C. 2010); *Babb v. Lee Cnty. Landfill SC, LLC*, 747 S.E.2d 468, 481 (S.C. 2013)).) The court also noted that Plaintiff's primary evidence in support of inadequacy had been Dr. Kasbekar's expert opinion testimony regarding the PWC's warnings, as he had summarized in his report. (*Id.* at 6.) Recognizing that its previous order excluded Dr. Kasbekar's testimony as to his proposed warning system, the court determined that this would also result in exclusion of his testimony as to the adequacy of the PWC's warnings:

> While this court determined that Dr. Kasbekar was qualified as an expert to issue []his opinion, it concluded that his proposed warnings system—which he developed ostensibly to ground his expert opinion that the product's warnings were inadequate and insufficient—should be excluded due to its unreliability under the standards of Fed. R. Evid. 702.

Again, it was Dr. Kasbekar's expert opinion that Plaintiff offered as evidence to support her inadequate warnings allegations. Because this court deemed Dr. Kasbekar's warnings opinion unreliable and therefore excluded it as evidence, this court is now hard-pressed to discern a "genuine dispute as to any material fact" for Plaintiff to show in order to withstand Defendants' Motion for Summary Judgment with respect to her warnings claims.

(*Id.* at 6-7 (internal citations and quotation marks omitted).) The court noted that there was little to no evidence beyond Dr. Kasbekar's excluded testimony that could serve to create a genuine factual dispute on the issue. (*Id.* at 7.)

Reviewing the evidence submitted by Defendants, the court explained that "the plain language of the multiple warnings both near the front and rear part of the PWC reasonably advise anyone who rides the PWC, including a passenger, of the very types of dangers Plaintiff endured and moreover provides specific recommendations to prevent such injuries." (*Id.* at 7-8 (internal citation omitted).) Relying on *Alford v. Lowe's Home Centers, Inc.*, No. 8:13-1787-BHH, 2014 WL 5305825, at *1 (D.S.C. Oct. 15, 2014), the court concluded that, in the absence of expert testimony, and with little to no other evidence that the warnings were inadequate, South Carolina law compelled its determination that the warnings were adequate as a matter of law. (*Id.* at 8-9; *see id.* at 13.)

Second, the court concluded that Plaintiff had failed to adduce sufficient evidence that the warnings' purported inadequacy caused her injury. (*Id.* at 9-10.) The court noted Plaintiff's deposition testimony that she did not read the warning labels prior to her injury. (*Id.* at 9.) Unless Plaintiff produced sufficient evidence that her failure to read the warnings was caused by their being inadequate—as, for example, by their being placed in unobservable locations on the PWC— her admission precluded a genuine issue of fact as to the cause of her injury. (*See id.* at 9-10.) The court explained that without Dr. Kasbekar's testimony, there was very little evidence that the warnings' placement rendered them inadequate. (*Id.* at 9.) The court also noted that Plaintiff had

testified that she is not sure whether she would have changed her behavior had she read the warnings. (*Id.* at 10.) In the end, the court determined that "[t]here is no evidence on which this court can rely to support Plaintiff's conclusion that 'passengers do not see, and cannot read the warning from the respective seat positions.'" (*Id.* (quoting ECF No. 92 at 5).)

Because Plaintiff had failed to adduce sufficient evidence that the warnings were inadequate and that their inadequacy caused her injury, the court granted Defendants' motion for summary judgment on Plaintiff's negligence and strict liability claims to the extent they were premised on inadequate warnings. (*Id.*)

### 2. Design defect claims

The court next turned to Plaintiff's claims of negligence, strict liability, and breach of warranty that were premised on allegations that the PWC was defectively designed. (*Id.* at 11.) Relying on South Carolina law, the court concluded it was "compelled to grant Defendants' Motion for Summary Judgment with respect to Plaintiff's design defect claims given the determination that the product's warnings are adequate as a matter of law." (*Id.* at 13.) The court explained:

> South Carolina law is clear that if a warning is given which, if followed, makes the product safe for use, the product cannot be deemed defective or unreasonably dangerous. More specifically, South Carolina continues to follow comment j to Section 402A of the *Restatement (Second) of Torts* (1965) for the conclusion that a product is not unreasonably dangerous if accompanied by adequate warnings that, if followed, make the product safe for use.

(*Id.* at 11-12. (internal citations, quotation marks, brackets and footnotes omitted) citing *Claytor v. General Motors Corp.,* 277 S.C. 259, 286 S.E.2d 129, 132 (1982); *Curcio v. Caterpillar, Inc.*, 543 S.E.2d 264, 268-69 (S.C. Ct. App. 2001); *Allen v. Long Mfg. NC, Inc.*, 505 S.E.2d 354, 357 (S.C. Ct. App. 1998)).) Because it had determined that the PWC's warnings were adequate as a matter of law, the court ruled that Plaintiff could not prove that the PWC was unreasonably

8

dangerous under South Carolina law. (*Id.* at 12-14. (citing *Phelan v. Synthes*, 35 F. App'x 102, 109 (4th Cir. 2002) (per curiam); *Aldana v. RJ Reynolds Tobacco Co.*, No. 2:06-366-CWH, 2007 WL 3020497, at *4-5 (D.S.C. Oct. 12, 2007); *Campbell v. Gala Indus., Inc.*, No. Civ.A.6:04-2036-RBH, 2006 WL 1073796, at *3 (D.S.C. Apr. 20, 2006); *Curcio*, 543 S.E.2d at 267-69).) For this reason, the court determined that Plaintiff was precluded from maintaining her negligence, strict liability, and breach-of-warranty claims. (*See id.* at 14 (citing *Allen*, 505 S.E.2d at 356; *Doty v. Parkway Homes Co.*, 368 S.E.2d 670, 671 (1988)).)

The court also specifically rejected Plaintiff's argument, based on language in *Allen*, that the court could conclude that the PWC's adequate warning renders it safe only if Defendants first concede that the product is unreasonably dangerous absent such a warning, which, Plaintiff argued, Defendants had not done. (*See id.* at 14-15.) The court determined that Plaintiff incorrectly ascribed to *Allen* the brightline rule she advanced and that *Allen*, when accurately interpreted, along with *Curcio* and comment j of Section 402A of the *Restatement (Second) of Torts*, severely undercut her interpretation and supported the court's interpretation. (*See id.*) Accordingly, the court granted Defendant's motion for summary judgment on Plaintiff's negligence, strict liability, and breach-of-warranty claims to the extent they were premised on defective design. (*Id.* at 15.)

On September 9, 2016, Plaintiff filed the instant Rule 59(e) motion to alter or amend the court's order granting summary judgment to Defendants. (ECF No. 110.)

## II. LEGAL STANDARDS

### A. Rule 59(e) motion to alter or amend standard

Rule 59 allows a party to seek an alteration or amendment of a previous order of the court. Fed. R. Civ. P. 59. A motion pursuant to Rule 59(e) may only be granted in three situations: "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not

available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 674 F.3d 369, 378 (4th Cir. 2012) (quoting *Zinkand v. Brown*, 478 F.3d 634, 637 (4th Cir. 2007)). It is the moving party's burden to establish one of these three grounds in order to obtain relief under Rule 59(e). *Loren Data Corp. v. GXS, Inc.*, 501 F. App'x 275, 285 (4th Cir. 2012).

The remedy afforded by Rule 59(e) "is an extraordinary remedy that should be applied sparingly." *Mayfield*, 674 F.3d at 378. Thus, Rule 59(e) motions "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 486 n.5 (2008) (internal quotation marks omitted). Moreover, a party's "[m]ere disagreement with the court's interpretation of the law is not an appropriate ground for a Rule 59(e) motion." *PCS Nitrogen, Inc. v. Ross Dev. Corp.*, 126 F. Supp. 3d 611, 639 (D.S.C. 2015) (internal quotation marks omitted) (citing, *inter alia*, *Hutchinson v. Staton*, 994 F.2d 1076, 1082 (4th Cir. 1993)).

**B. Motion for summary judgment standard**

Summary judgment is appropriate when the materials in the record show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[I]n ruling on a motion for summary judgment, 'the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [her] favor.'" *Tolan v. Cotton*, ___ U.S. ___, 134 S. Ct. 1861, 1863 (2014) (per curiam) (brackets omitted) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party,

to survive the motion for summary judgment, may not rest on the allegations averred in her pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *See id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *See Liberty Lobby, Inc.*, 477 U.S. at 252. A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and a fact is material if it "might affect the outcome of the suit under the governing law." *Id.* at 248.

### III. ANALYSIS

In her motion, Plaintiff does not point to any intervening change in controlling law or to any new evidence not available to her at the time the court entered its summary judgment order.[3] (*See* ECF No. 110 at 5.) Instead, she contends only that the court's order was based on clear errors of law and resulted in manifest injustice. (*See id.*) Plaintiff makes two overarching arguments. First, she argues that the court erred in determining that she failed to adduce sufficient evidence in support of her claims premised on inadequate warnings. She advances four reasons supporting this argument: (1) the court erroneously excluded Dr. Kasbekar's testimony regarding his warnings opinions (*id.* at 5-7; ECF No. 114 at 2-7); (2) the court erroneously excluded Dr. Kasbekar's testimony regarding his proposed alternative warnings (ECF No. 110 at 8-9; ECF No. 114 at 9-10); (3) the court erred in determining that expert testimony was necessary to decide whether a warning is adequate (ECF No. 110 at 13-14; ECF No. 114 at 8-9); and (4) the court failed to account for evidence, aside from Dr. Kasbekar's excluded testimony, that showed the PWC's warning labels were inadequate (ECF No. 110 at 9-10; ECF No. 114 at 7-8). Second, she argues that the court erred in concluding that, under South Carolina law, a product cannot be unreasonably

---

[3] *See infra* Part III.A.2 (discussing exhibits attached to Plaintiff's reply).

dangerous if it is accompanied by adequate warnings that, if followed, make the product safe for use (ECF No. 110 at 10-13; ECF No. 114 at 10-13). The court addresses these arguments in turn.

**A. Inadequate warning claims**

> 1. The court did not clearly err in excluding Dr. Kasbekar's testimony as to the adequacy of the warnings.

Plaintiff first argues that the court erred in determining that Dr. Kasbekar's testimony regarding the inadequacy of the PWC's warnings should be excluded. From the outset, the court notes that this argument challenges the court's summary judgment order and not its order granting in part the motion *in limine*. This is so because, although the order granting in part the motion *in limine* provides reasons for excluding this testimony, the summary judgment order is the first instance in which the court conclusively determined that the testimony would be excluded.[4] In this regard, the court also notes that Plaintiff directs her challenge regarding the exclusion to the summary judgment order and not to the previous order granting in part the motion *in limine*. (*See* ECF No. 110 at 5-6.) Thus, unlike other arguments Plaintiff raises (*see infra* Part III.A.2), the challenge to the exclusion of Dr. Kasbekar's testimony regarding the adequacy of the warnings appropriately is reviewed under Rule 59(e)'s standards.

For the same reasons outlined in the preceding paragraph, the court further notes that, although it might appear to be so at first blush, this is not a case in which a Rule 59(e) movant's challenge is based on the court's alleged misapprehension of one of its previous orders. Rather, Plaintiff's argument appears to accept the analytical structure presented by the order granting in part the motion *in limine*. (*See* ECF No. 110 at 5-6.) There appears to be no dispute that two lines

---

[4] The court notes that the parties' briefing shows that they anticipated that the extent of exclusion of Dr. Kasbekar's testimony would be crucial to the outcome of the summary judgment motion, and they were given ample opportunity to present argument on the issue. (*See* ECF No. 70-1 at 8-10, 13-15; ECF No. 92 at 6-8.)

of testimony—Dr. Kasbekar's opinion testimony as to the adequacy of the PWC's warnings and his opinion testimony regarding his proposed warning system—are at issue; that the court correctly determined that Dr. Kasbekar was qualified to opine on these matters; and that, although it touched on Dr. Kasbekar's reliability for both lines of testimony, the court specifically excluded his testimony regarding his proposed warning system and did not specifically address whether his testimony as to the warnings' adequacy would be excluded. Thus, Plaintiff's motion straightforwardly challenges the court's decision in its summary judgment order that Dr. Kasbekar's testimony as to the warnings' adequacy would be excluded for reasons largely set forth in the motion granting in part the motion *in limine*.

Reduced to its essentials, Plaintiff's argument is that the court committed a clear error of law in reaching its determination that Dr. Kasbekar's testimony as to the warnings' adequacy should be excluded for want of sufficient reliability. In her view, the court based its determination that such testimony would be unreliable on its prior determination that Dr. Kasbekar's testimony regarding his proposed warning system was unreliable because it had not been tested. (*See* ECF No. 110 at 6.) Plaintiff contends this was error because Dr. Kasbekar's testimony as to the warnings' adequacy was not based on his proposed warning system, but rather on "his specialized skill, training, and experiences." (*Id.*; *see also id.* at 6-7; ECF No. 114 at 2-6.) She further contends that the court's exclusion of his testimony as to the warnings' adequacy based solely on the exclusion of his testimony regarding his proposed warning system constitutes legal error because an expert need not create a proposed alternative warning system in order to reliably opine on the adequacy of an existing warning system and because Dr. Kasbekar's reliance on his knowledge and expertise alone renders his opinion as to the warnings' adequacy reliable. (ECF No. 110 at 6-7; ECF No. 114 at 2-6.)

The court rejects this argument. First, the court rejects Plaintiff's characterization of the basis for its decision. The court did not rely solely on its previous determination that Dr. Kasbekar's testimony regarding his proposed warning system was excluded as unreliable as its basis for determining that his testimony as to the warnings' adequacy should be excluded as unreliable. Although the court did note, in its summary judgment order, that Dr. Kasbekar developed his proposed warning system "ostensibly to ground his expert opinion that the [PWC]'s warnings were inadequate and insufficient" (ECF No. 106 at 6-7 (internal quotation marks omitted)), focusing solely on this single statement ignores the court's other reason expressed in its order granting in part the motion *in limine*. In that order, the court also observed that Dr. Kasbekar "provide[d] no specific relevant research or studies—in neither his deposition testimony nor his report—on which he relies to inform . . . his opinion that the warnings are inadequate and insufficient." (ECF No. 104 at 9.) The court pointed to both these deficiencies and determined that Dr. Kasbekar's training and experience was not enough to overcome them under *Daubert*'s standard for reliability, a prerequisite to testifying to the opinions contained in his report. (*Id.*)

Second, the court rejects Plaintiff's arguments that the court committed clear errors of law in concluding that the deficiencies it cited could not render Dr. Kasbekar's testimony as to the warnings' adequacy unreliable when he relied on his training and experience in forming his opinion. Plaintiff castigates the court for creating a brightline rule that an expert opining as to the adequacy of a warning may not be deemed reliable unless he creates and tests an alternative warning, while at the same time advancing her brightline rule that such an expert must be deemed reliable when relying solely on his training and experience. This not only mischaracterizes the court's analysis but it also misunderstands the test for reliability under *Daubert*. Simply put, there are no brightlines here. The *Daubert* test is flexible: "[r]ather than providing a definitive or

exhaustive list, *Daubert* merely illustrates the types of factors that will 'bear on the inquiry.'" *United States v. Crisp*, 324 F.3d 261, 266 (4th Cir. 2003) (quoting *Daubert*, 509 U.S. at 593); *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141-42 (1999). ("[T]he test of reliability is 'flexible,' and *Daubert*'s list of specific factors neither necessarily nor exclusively applies to all experts or in every case. Rather, the law grants a district court the same broad latitude when it decides *how* to determine reliability as it enjoys in respect to its ultimate reliability determination."). The failure of an expert testifying to a warning's adequacy to validly create and test an alternative design weighs against the reliability of his testimony. *See Brown v. Raymond Corp.*, 432 F.3d 640, 648 (6th Cir. 2005); *Dhillon v. Crown Controls Corp.*, 269 F.3d 865, 870 (7th Cir. 2001); *Bourelle v. Crown Equip. Co.*, 220 F.3d 532, 538-39 (7th Cir. 2000); *Jaurequi v. Carter Mfg. Co., Inc.*, 173 F.3d 1076, 1084 (8th Cir. 1999). The failure of such an expert to support his opinion with relevant studies or literature in the field likewise weighs against reliability. *See Humphries v. Mack Trucks, Inc.*, 198 F.3d 236, at *3 (4th Cir. 1999) (unpublished table decision) "([A]n expert opinion supported by 'relevant literature in the field' is more likely to be admissible under Rule 702 than one that is not." (quoting *Oglesby v. Gen. Motors Corp.*, 190 F.3d 244, 249 (4th Cir. 1999)). Although such an expert's training and experience weigh in favor of his reliability, standing alone, they may or may not prove sufficient depending on the circumstances. *Compare Pineda v. Ford Motor Co.*, 520 F.3d 237, 248 (3d Cir. 2008) (sufficient), *with Bourell*e, 220 F.3d at 537 n.11 (insufficient); *see also Dhillon*, 269 F.3d at 870 ("*Daubert* is a flexible test and no single factor . . . is dispositive.").

Here, the court accounted for the facts that Dr. Kasbekar had some training and experience in the relevant field, had failed to subject his proposed warning to testing and thus had failed to create an alternative test on which to form an opinion regarding the warnings' adequacy, and had

15

not tied his opinion to the warnings' adequacy to any specific research or studies within the field. Perhaps another court, reviewing the issue *de novo*, would agree with Plaintiff that Dr. Kasbekar's training and experience, alone, is enough to meet the *Daubert*'s reliability requirement. This court did not, and Plaintiff's disagreement with this conclusion is not grounds for relief under Rule 59(e). *See PCS Nitrogen*, 126 F. Supp. 3d at 639 (party's "[m]ere disagreement" not enough).

### 2. The court did not clearly err by excluding Dr. Kasbekar's testimony regarding his proposed warning system.

Unable to defeat the court's exclusion of Dr. Kasbekar's testimony as to the warnings' adequacy directly, Plaintiff tries a more indirect route. Plaintiff next argues that the court committed a clear error of law by excluding Dr. Kasbekar's opinion testimony as to his proposed warning system. As an initial matter, the court notes that its decision to exclude this testimony came in its July 29, 2016 order granting in part Defendants' motion *in limine*. Plaintiff has filed no motion asking the court to reconsider that order, but, to the extent the instant motion could be construed as requesting reconsideration of the order, such request could not be assessed under Rule 59(e) because it would be untimely filed. *See* Fed. R. Civ. P. 59(b) (requiring Rule 59(e) motion to be filed within 28 days after entry of order being challenged.) The order could be reconsidered, if at all, under Fed. R. Civ. P. 60(b). *See Shepherd v. Int'l Paper Co.*, 372 F.3d 326, 328 n.1 (5th Cir. 2004); *Small v. Hunt*, 98 F.3d 789, 797 (4th Cir. 1996), *cited with approval in Robinson v. Wix Filtration Corp. LLC*, 599 F.3d 403, 412 (4th Cir. 2010).

A movant seeking relief from a judgment under Rule 60(b) must make a threshold showing of "timeliness, a meritorious defense, a lack of unfair prejudice to the opposing party, and exceptional circumstances." *Dowell v. State Farm Fire & Cas. Auto. Ins. Co.*, 993 F.2d 46, 48 (4th Cir. 1993) (internal quotation marks omitted); *accord Aikens v. Ingram,* 652 F.3d 496, 500-01 (4th Cir. 2011) (en banc). After this threshold showing is made, Rule 60(b) "authorizes a district court

16

to grant relief from a final judgment for five enumerated reasons or for 'any other reason that justifies relief.'" *Aikens*, 652 F.3d at 500 (quoting Fed. R. Civ. P. 60(b)(6)); *see also Moses v. Joyner*, 815 F.3d 163, 167-68 (4th Cir. 2016). "Rule 60(b) may not be used to relitigate claims already decided by the court." *Saunders v. City of Petersburg Police Dept.*, 158 F. App'x 491, 491 (4th Cir. 2005) (per curiam) (citing *CNF Constructors, Inc. v. Donohoe Constr. Co.*, 57 F.3d 395, 400 (4th Cir. 1995) ("Rule 60(b) does not authorize a motion for reconsideration of a legal issue.")). Nor may it be used to "grant reconsideration when the movant attempts 'to raise arguments which could have been raised prior to the issuance of the judgment' or 'to argue a case under a novel legal theory that the party had the ability to raise in the first instance.'" *Westport Ins. Corp. v. Albert*, 208 F. App'x 222, 227 (4th Cir. 2006) (quoting *Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998)).

Plaintiff has not made the required showing. As an initial matter, the exclusion of expert witness testimony under *Daubert* following full argument from the parties on the issue hardly constitutes exceptional circumstances. Further, Plaintiff fails to point to anything in the court's decision that could be described as so out of the ordinary that it merits being called an exceptional circumstance. For this reason, the argument must be rejected.

Even if Plaintiff had satisfied the threshold requirement to show that her circumstances are exceptional, Plaintiff fails to demonstrate that she should be granted relief under one of the five reasons enumerated in Rule 60(b) or under Rule 60(b)'s catchall provision. Plaintiff points to an exhibit showing that the newest models of PWCs contain warning labels in the location that Dr. Kasbekar proposed as newly discovered evidence. (ECF No. 114 at 10; ECF No. 114-1.) This evidence does not meet the requirements of Rule 60(b)(2) because Plaintiff has not demonstrated that such evidence was not discoverable with reasonable diligence prior to the expiration of the

28-day period for filing a Rule 59(e) motion challenging the court's July 29, 2016 order. *See* Fed. R. Civ. P. 60(b)(2). In fact, as evidence submitted by Defendants demonstrates, the information contained in the exhibit was readily discoverable long before the court entered its order. (*See* ECF No. 120-1.) Other than the passing reference to newly discovered evidence, Plaintiff's arguments appear simply to be that the court's determinations as to the reliability of Dr. Kasbekar's testimony were incorrect for the same or similar reasons she advanced in her response in opposition to the motion *in limine*. (*Compare* ECF No. 110 at 8-9, *with* ECF No. 83 at 10-12.) The court fully considered these arguments and rejected them. (*See* ECF 104 at 7-10.) Such arguments are insufficient to justify relief under Rule 60(b). *See Saunders*, 158 F. App'x at 491; *CNF Constructors*, 57 F.3d at 400. To the extent Plaintiff raises new arguments—such as contending that the proposed warning has been tested and is thus reliable because it was excerpted from Defendants' warning (*see* ECF No. 110 at 8)—these are also insufficient to justify Rule 60(b) relief. *See Albert*, 208 F. App'x at 227; *Pac. Ins. Co.*, 148 F.3d at 403.

### 3. The court did not clearly err in its determination regarding the importance of expert testimony in deciding whether a warning is adequate.

Unable to overcome the court's rulings regarding the exclusion of Dr. Kasbekar's testimony, Plaintiff next attempts to argue that those rulings should not have mattered. Thus, Plaintiff next argues that the court committed a clear error of law in determining that expert testimony is necessary to decide whether a warning is adequate. (ECF No. 110 at 13-14; ECF No. 114 at 8-9.) She suggests that the court's summary judgment order ruled that, in the absence of expert testimony that a warning is inadequate, a plaintiff cannot withstand summary judgment on a products liability claim premised on inadequate warning. (*See* ECF No. 110 at 13; ECF No. 114 at 8.) She also argues that the court erred by failing to assess whether the issue was beyond the

common knowledge of jurors. (*See* ECF No. 110 at 13-14 (citing *Babb*, 747 S.E.2d at 481; *Green v. Lilliewood*, 249 S.E.2d 910, 913 (1978)).)

As an initial matter, the court again disagrees with Plaintiff's characterization of its summary judgment order. The order never stated that expert testimony is always necessary for a jury to reach a determination that a warning is inadequate. In fact, the court went out of its way to avoid such a broad statement of the law, explaining that "expert testimony is perhaps the most appropriate form of evidence to support [such] claims," and that the court was "hard-pressed" to discern evidence supporting a genuine dispute on the issue in the absence of expert testimony. (*See* ECF No. 106 at 6-7.) These statements demonstrate that the court was under no illusion that, in every products liability case involving allegations of inadequate warnings, a plaintiff must rely on expert testimony that the warning is inadequate or else may not maintain the case.

Moreover, the court did not whistle past assessment of whether such expert testimony was required in this case. The court noted that "South Carolina law requires expert evidence where 'a factual issue must be resolved with scientific, technical, or any other specialized knowledge'" (*id.* at 6 (quoting *Watson*, 699 S.E.2d at 175)) and determined that expert testimony was "perhaps the most appropriate" evidence "[b]ecause the adequacy of warnings in products liability cases tend to implicate the study of human factors and other industry standards" and "those areas are generally beyond the common knowledge of a jury" (*id.*). At most, the court determined that, in this particular case, expert testimony as to the warnings' inadequacy would be important; but it never stated such testimony was absolutely necessary. Indeed, rather than dispose of the claims on the ground that Plaintiff had failed to adduce admissible expert testimony, the court determined that it was "hard-pressed" to discern a genuine factual dispute on the issue precisely because Dr. Kasbekar's opinion testimony was the "primary evidence Plaintiff presented" on the issue and

because "there is little to no evidence in the record" on the issue beyond his testimony. (*Id.* at 6-7.)

In short, Plaintiff's argument is incorrect in its premise: (1) the court never ruled that expert testimony was required to maintain the claims, and (2) after making the assessment Plaintiff contends it failed to make, the court determined only that expert testimony was important to Plaintiff's case. Thus, Plaintiff has pointed to no clear error of law that would justify granting Rule 60(b) relief here.

### 4. The court did not clearly err by failing to account for evidence showing that the warnings were inadequate.

Unable to show that the court incorrectly relied exclusively on the absence of expert testimony, Plaintiff next attempts to show that the court's estimation of the other evidence was somehow flawed. Plaintiff argues that the court failed to adequately account for other evidence, aside from Dr. Kasbekar's excluded testimony, that, she claims, showed that the PWC's warnings were inadequate. (*See* ECF No. 110 at 9-10; ECF No. 114 at 7-8.) The other evidence to which Plaintiff refers is anticipated testimony from Defendants' expert, Dr. Nathan Dorris, contained in the form of deposition testimony, which she summarizes in her motion. (*See* ECF No. 110 at 3-4.) In her view, "even without any expert testimony from Dr. Kasbekar, viewing the evidence in the light most favorable to the Plaintiff, the jury could easily conclude, given Dr. Dorris expert testimony, that the warnings are inadequate." (*Id.* at 10.) Plaintiff also contends that certain eyewitness testimony confirms some of Dr. Dorris' expert testimony. (*Id.* at 4.)

All this is putting the shoes on before the socks. Although Plaintiff's motion references a number of statements made by Dr. Dorris at his deposition in support of her argument, the pages of the deposition transcript containing many of those statements were not filed with the court prior to entry of the summary judgment order and were first filed with the court as attachments to the

instant motion.[5] Likewise, some of the statements made by the eyewitnesses that Plaintiff cites in support of Dr. Dorris' testimony were first filed with the court as attachments to the instant motion and thus were not filed with the court until after entry of the summary judgment order.[6]

The court will not consider statements that were not filed with the court until after entry of its summary judgment order. In defending against a motion for summary judgment, "a party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions." Fed. R. Civ. P. 56(c)(1)(A). "The court need not consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). As a general rule, then, the court may not consider portions of depositions that have not been made part of the record in the case because they have not been filed with the court. *See Alexander v. Casino Queen, Inc.*, 739 F.3d 972, 978-79 (7th Cir. 2014); *Nicholson v. Hyannis Air Serv., Inc.*, 580 F.3d 1116, 1127 n.5 (9th Cir. 2009). Furthermore, a Rule 59(e) motion may not be used to present evidence that could have been presented prior to the entry of the order being challenged. *See Baker*, 554 U.S. at 486 n.5. For these reasons, the court will only consider

---

[5] The statements by Dr. Dorris that Plaintiff references in her moving papers are contained in pages 29-31, 33, 50-51, 84-85, 95-96, 108, and 135 of the transcript of Dr. Dorris' deposition. (*See* ECF No. 110 at 3-4, 8; ECF No. 114 at 7-8.) Prior to entry of the summary judgment order, only six exhibits filed with the court contained pages from the transcript. (*See* ECF Nos. 65-4, 78-2, 79-2, 83-14, 92-3, 95-1.) These exhibits included only pages 1-8, 17-20, 29, 31, 33, 44, 49, 51, 53-60, 93-100, 113-16, 121-32, 149, 154, and 161-64 of the transcript. (*See id.*) Thus, the statements on pages 30, 50, 84-85, 108, and 135 that Plaintiff references in the instant motion were not filed with the court until after entry of the summary judgment order.

[6] Plaintiff references statements by eyewitnesses Michelle Abascal and Lisa Abascal contained on pages 66 and 10 of their respective deposition transcripts. (*See* ECF No. 110 at 4.) Prior to entry of the summary judgment order, only three exhibits filed with the court contained pages from Michelle's deposition transcript, and these exhibits included only pages 1-4, 13-16, 33-52, and 86. (*See* ECF Nos. 70-7, 71-3, 81-2.) Only two exhibits contained pages from Lisa's deposition transcript, and these exhibits included pages 16 and 20. (*See* ECF Nos. 83-10, 92-8.) Thus none of the statements by Michelle and Lisa that Plaintiff references in the instant motion were filed with the court until after entry of the summary judgment order.

statements contained in deposition excerpts that were before it at the time it entered its summary judgment order.

Only five pages of Dr. Dorris' deposition transcript on which Plaintiff relies in the instant motion were in the record at the time the court entered its order. Of those, two are irrelevant to the present argument advanced by Plaintiff.[7] Plaintiff cites the remaining three pages in support of her assertion that "Dr. Dorris concede[d] that there are times when the [warning] in front of the driver is going to be obscured while the craft is being operated" and that "the time to view the [warnings] is not when someone is using the PWC; instead, users must look at the [warnings] before they use the PWC." (ECF No. 110 at 4 (citing ECF No. 110-2 at 6, 9-10).) One of the pages, page 51, even read in the light most favorable to Plaintiff, does not support these assertions. That leaves only two pages, and Dr. Dorris' testimony contained in them is hardly a smoking gun:

> Q. And if the operator is operating the machine, how is Ms. Hickerson expected to see that warning?
>
> A. Well, as I described in my report—well, in answer to your question, I don't know if Ms. Hickerson would be able to see it from that vantage point or not. It's going to depend on the people in front of her and their kind of posture and position.
>
> But as I discussed in my report, that's not the time for Ms. Hickerson to observe the warning. She would, as I say, have the benefit of the safety information indirectly through the folks that are the owners of the machine, the operator of the machine, as well as passengers have an opportunity to read the warnings before they actually get on and start riding.
>
> So back at the dock, before ever operating either today or in the days earlier, would be the time to read, as opposed to once she's already on as a passenger. That's, generally speaking, not the time to read warnings; but, rather, to read them in advance of the activity.

---

[7] Plaintiff cites page 31 of the transcript for the proposition that, in the industry, testing of warning labels is rare. (ECF No. 110 at 3, 8.) She cites page 33 of the transcript for the proposition that Dr. Kasbekar used a process for vetting his warning that is similar to the process used by Dr. Dorris. (*Id.* at 3.)

Q. So the on-product labels are not made to be—made to be seen at the time you're boarding the personal watercraft?

A. Oh, I think I would disagree with that. I think they are able to be seen during boarding. It's going to depend on—as you said, once you're seated and how many people, can you still have a direct line of sight or might it be obscured . . . .

(ECF No. 110-2 at 9-10.) The court doubts that this testimony of Defendants' expert, standing alone and without other expert opinion explaining that both of the PWCs warnings would be inadequate if the front warning might not be observable by a passenger who has already boarded the PWC, amounts to anything more than a scintilla of evidence that the warnings were inadequate, which is necessary to create a genuine issue of fact. *See Liberty Lobby, Inc.*, 477 U.S. at 252.

Furthermore, the court notes that Plaintiff raised similar arguments regarding the ability of a passenger to view the front warning in her response in opposition to Defendants' motion for summary judgment (ECF No. 92 at 6), and the court, fully aware of the argument, nonetheless concluded that Plaintiff had presented "little to no evidence" that could support a finding of inadequacy in the absence of expert opinion testimony. (ECF No. 106 at 7; *see id.* at 8-9 (citing *Alford*, 2014 WL 5305825; *Phelan*, 35 F. App'x 102).) Thus, Plaintiff's arguments in this vein in the instant motion appear to simply rehash arguments advanced earlier, which were rejected and cannot now justify Rule 59(e) relief. *See Baker*, 554 U.S. at 486 n.5. The court also notes that, although Plaintiff alluded to this testimony from Dr. Dorris in her response in opposition to Defendants' summary judgment motion in support of her assertion that the front warning "is more than three feet from the last seat of the [PWC]" (ECF No. 92 at 6 (citing ECF No. 110-2 at 9)), she never cited to it in support of the assertions she makes now—that Dr. Dorris conceded that the front warning might not be observable by a passenger after she boards and that the warnings are meant to be viewed before the PWC is operated (*see id*; *see also* ECF No. 110 at 4). When a non-

movant fails to cite materials in the record to support her assertion that an issue of fact is genuinely disputed, the court is under no obligation to "scour the record in search of evidence to defeat a motion for summary judgment." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (internal quotation marks omitted), *cited with approval in Muhammad v. Giant Food Inc.*, 708 F. App'x 757, 764 (4th Cir. 2004); *see also Cray Commc'ns, Inc. v. Novatel Comput. Sys., Inc.*, 33 F.3d 390, 395-96 (4th Cir. 1994). Plaintiff can hardly claim the court clearly erred by failing to address deposition testimony she never cited, especially in the context of a Rule 59(e) motion, which may not be used to present argument or evidence that could have been presented prior to the entry of the challenged order. *See Baker*, 554 U.S. at 486 n.5; *Causey v. Balog*, 162 F.3d 795, 803 n.5 (4th Cir. 1998).

In sum, Plaintiff has failed to demonstrate that the court committed clear error in determining that she adduced insufficient evidence, beyond Dr. Kasbekar's excluded testimony, that the warnings were somehow inadequate.

**B. Design defect claims**

Lastly, Plaintiff attempts to resurrect her claims premised on allegations of defective design by arguing that the court's reason for granting Defendants summary judgment on those claims was flawed. Plaintiff argues that the court committed a clear error of law in concluding that, under South Carolina law, a product cannot be unreasonably dangerous if it is accompanied by adequate warnings that, if followed, make the product safe for use. (*See* ECF No. 110 at 10-13; ECF No. 114 at 10-13). Plaintiff argues at length that the court's legal conclusion was wrong and stemmed from incorrect interpretations of *Allen*, 505 S.E.2d 354, *Curcio*, 286 S.E.2d 264, and comment j of Section 402A of the *Restatement (Second) of Torts*. (*Id.*)

24

The court rejects this argument. First, Plaintiff advanced this argument in briefer form in her response in opposition to Defendants' motion for summary judgment (*see* ECF No. 92 at 8), and the court rejected it. Attempting to relitigate the issue here provides no basis for Rule 59(e) relief. *See Baker*, 554 U.S. at 486 n.5. Second, Plaintiff's argument amounts to her advancing a mere disagreement with the court's interpretation of South Carolina law, which is not an appropriate ground for a Rule 59(e) motion. *See Hutchinson*, 994 F.2d at 1082; *PCS Nitrogen*, 126 F. Supp. 3d at 639. Third, for the same reasons set forth in its order granting summary judgment, the court concludes that its interpretations of *Allen*, *Curcio*, and the *Restatement* were not incorrect and that the court was correct in concluding that, under South Carolina law, a product cannot be unreasonably dangerous if it is accompanied by adequate warnings that, if followed, make the product safe for use.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's motion to alter or amend the court's order granting summary judgment to Defendants (ECF No. 110) is **DENIED**.

**IT IS SO ORDERED**.

*J. Michelle Childs*

United States District Court Judge

December 16, 2016
Columbia, South Carolina